UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie PEELE, Defendant-Appellant.

No. 77-2306.

United States Court of Appeals,
Ninth Circuit.

May 5, 1978.

**490**

Thomas W. Hillier, II, Seattle, Wash., for defendant-appellant.

Robert Westinghouse, Seattle, Wash., for plaintiff-appellee.

Before BROWNING, GOODWIN, and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

The appellant, Peele, challenges his conviction for bank robbery under 18 U.S.C. §§ 2, 2113(a) & (d). The sole issue here is whether the trial court erred in refusing to hold an evidentiary hearing to determine whether a newspaper photograph identifying Peele as the robber was so suggestive to eyewitnesses that exclusion of their trial testimony was required. We affirm.

On January 27, 1977 two armed men entered and robbed the Seattle Heights Branch of the Old National Bank of Washington. One of the pair entering the bank wore a nylon stocking over his head. The issue at the trial was the identity of this masked robber. The Government charged it was Peele.

As the two robbers left the bank, police units arrived. One robber fled on foot and the other, allegedly Peele, fled in a blue automobile driven by a third participant. Witnesses saw the men change from the blue car to a yellow one. Within ten minutes after the robbery, the yellow car was stopped and the driver and Peele were arrested. The Government states, and appellant does not dispute, that newspaper reporters were "chasing around" during the ten-minute interval between the robbery and appellant's arrest. Reporters were present at the scene of the arrest, and a newspaper story contained photo coverage of the robbery scene and of the appellant's apprehension by the police. It appears from the record that one photograph clearly depicted the appellant, without a mask.

During the jury trial, it came to the attention of the counsel for the defense that one of the prospective government witnesses, a Judy Bittner, had seen the newspaper photograph and had told the prosecutor that the photograph had aided her in identifying the appellant in a lineup. When Bittner was called to the stand, the defense requested a hearing to determine the extent of any suggestion caused by the newspaper photograph and requested that a hearing be held "perhaps prior to every witness of an identification." Although there is some doubt that the objection was adequately renewed, we assume that the request for voir dire examination on the issue of improper suggestion was applicable to each of the eyewitnesses who testified, including Bittner. The court denied the defense motion and stated that the impact of the photograph was a matter for cross-examination.

Appellant does not suggest that the Government was in any way responsible for the appearance of the photographs in the newspaper. Nevertheless, using the words of the Supreme Court in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), he asserts that the identification procedures here were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," and that an evidentiary hearing should have been held outside the presence of the jury to evaluate that claim.

The relevant Supreme Court cases indicate that the force of a preidentification suggestion is not alone determinative of admissibility. What controls the case is the likelihood of irreparable misidentification balanced against the necessity for the Government to use the identification procedures in question. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States, supra*; *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See United States v. Pheaster*, 544 F.2d 353, 370 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). In *Stovall v. Denno, supra*, the Su-

preme Court held that no due process violation occurred when a black defendant, the only black person in the room, was presented for identification, handcuffed to a police officer, at the hospital bedside of the victim of an attack because the need for "an immediate hospital confrontation was imperative." *Id.* at 302, 87 S.Ct. at 1972. The Court in *Stovall* did not discuss whether any likelihood of misidentification resulted from the confrontation, but in a case decided the same day the Court emphasized the suggestiveness of the *Stovall* encounter, stating that "[i]t is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." *United States v. Wade*, 388 U.S. 218, 234, 87 S.Ct. 1926, 1936, 18 L.Ed.2d 1149 (1967). The confrontation did not violate due process because the need for the procedure was compelling. *Baker v. Hocker*, 496 F.2d 615, 617 (9th Cir. 1974); *see United States v. Freie*, 545 F.2d 1217, 1224 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977).

In the case before us there is no government involvement at all in the suggestive identification procedure and thus the balancing test under *Stovall* and *Simmons* is not applicable.[1] A case might arise where the mind of a witness is so clouded by suggestions from nongovernment sources that a conviction based principally on the testimony of that witness violates due process, *see Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), but that point was not approached in the instant case.

 When government involvement is absent from the calculus, leaving us only the question whether or not a suggestive device has impaired the credibility of identi-

fication testimony by a particular witness, we see no reason for adopting a rule requiring examination of the witness outside the presence of the jury. The extent to which a suggestion from nongovernment sources has influenced the memory or perception of the witness, or the ability of the witness to articulate or relate the identifying characteristics of the accused, is a proper issue for the trier of fact to determine. Therefore, we hold that it was not error for the court to permit the witness to testify on direct, leaving questions relating to the allegedly suggestive influences to be explored by defense counsel on cross-examination. Only where there is grave doubt as to the admissibility of the witness' testimony would it be necessary to consider whether a hearing on the preliminary question of competency should be held outside the presence of the jury, and even this determination lies largely within the discretion of the trial court. Fed.R.Evid. 104(c) and Notes of Advisory Committee; *United States v. Gerry*, 515 F.2d 130, 137 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

The Third Circuit has examined the issue of pretrial publicity from nongovernmental sources in *United States v. Zeiler*, 470 F.2d 717, 719–20 (3d Cir. 1972), and, for reasons well stated in that opinion, has also concluded that the rule of *Simmons* is inapplicable. *Accord, United States v. Broadhead*, 413 F.2d 1351, 1361 (7th Cir. 1969), *cert. denied*, 396 U.S. 1017 (1970). *See United States v. Grose*, 525 F.2d 1115, 1118 (7th Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976).

Appellant's conviction is AFFIRMED.

---

1. We are not presented with a case where the police may have assisted or encouraged the pretrial publicity. *Cf. United States v. Boston*, 508 F.2d 1171, 1177–78 (2d Cir. 1974) (photo released to newspaper by police and later used in photospread; but no likelihood of irreparable misidentification), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975); *United States v. Milano*, 443 F.2d 1022, 1025–

26 (10th Cir.) (photo of suspect released to newspapers by police but no likelihood of irreparable misidentification), *cert. denied*, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971).

In *Dearinger v. United States*, 468 F.2d 1032 (9th Cir. 1972), there was a suggestion of governmental involvement in the pretrial publicity, but the court, applying the *Simmons* test, held that there was no denial of due process.