527 S.E.2d 389

**The STATE, Respondent,**

v.

**Antonio TISDALE, Appellant.**

**No. 3108.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Feb. 7, 2000.

608

Assistant Appellate Defender Melody J. Brown, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor David P. Schwacke, of North Charleston, for respondent.

## PER CURIAM:

A jury convicted Antonio Tisdale of entering a bank with intent to steal, armed robbery, and possession of a weapon during the commission of a violent crime. The trial court sentenced him to a total of thirty-two years imprisonment. Tisdale appeals, arguing the court erred in refusing to sup-

press tainted identifications and in denying his motion for mistrial based on a violation of the court's sequestration order. We affirm.

## FACTS/PROCEDURAL HISTORY

On October 24, 1996, at approximately 10:57 a.m., a gunman robbed a branch of First Citizens Bank in North Charleston. No one saw the robber before he entered or after he left the bank. The police soon arrived and canvassed the area. Larry Fanning, who lived behind the bank at the time, told the police he saw a late-model brown Cadillac in need of a new muffler "shooting" up the alleyway around 11:00 a.m. Fanning described the car as having a bright yellow paper license tag reading "Your Car Store." Through the distinctive tag, the police were able to trace ownership of the car to Tisdale. Based on Fanning's subsequent identification of the car, the police arrested Tisdale later that afternoon.

The following morning, as Officer Robert Myers assembled a photo line-up, a teller from First Citizens, Justine Mood, telephoned and stated she had seen a report of Tisdale's arrest on television the previous night and she believed Tisdale was the robber.[1] Myers drove to the bank and took Mood's statement. While there, Georgia Vannice, another teller, told him she had identified Tisdale from a photo in a newspaper article about his arrest.[2] She also gave Myers a written statement. Michelle Crawford, a "floating" temporary for First Citizens, also identified Tisdale from the newspaper the morning after the robbery and subsequently gave a statement to police. After these identifications, Myers never completed the line-up preparation because the police decided it would be futile. A few days later, however, Myers returned to the bank and showed Vannice a photograph of Tisdale which she said depicted the robber.

On February 3, 1997, a Charleston County grand jury indicted Tisdale for entering a bank with intent to steal,

---

[1]. The television news report was filmed at Tisdale's post-arrest bond hearing.

[2]. The photograph of Tisdale was a "mug shot" taken after a previous arrest for drug possession in 1995.

armed robbery, possession of a weapon during the commission of a violent crime, and grand larceny. The case was tried before a jury on November 17–19, 1997. Prior to opening statements, Tisdale moved to sequester the witnesses. The trial court granted the motion, but exempted two of the State's case agents from his ruling. Thereafter, Tisdale moved to suppress the identifications of him made by the three tellers. The trial court held an *in camera* hearing on the reliability of each teller's identification, and denied the motion as to each witness.

The jury found Tisdale guilty of all the charges. The trial court, however, set aside the larceny conviction as a lesser included offense of armed robbery. The court sentenced Tisdale to thirty years for armed robbery, thirty years for entering a bank with intent to steal, concurrent, and two years for possessing a gun during the crime, consecutive to the robbery sentence. Tisdale appeals, arguing the trial court erred in permitting the tellers' in-court identifications, and in refusing to grant a mistrial based on David Rykowski's violation of the court's order sequestering all non-agent witnesses.

## LAW/ANALYSIS

### I. Impropriety of Identification Procedure

 Tisdale first argues the trial court erred in failing to suppress the identifications by Mood, Vannice and Crawford. We disagree.

 The admission of evidence is within the sound discretion of the trial court. *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995); *State v. Brown,* 333 S.C. 185, 508 S.E.2d 38 (Ct.App.1998). Accordingly, a trial court's decision to allow the in-court identification of an accused will not be reversed absent an abuse of discretion or prejudicial legal error. *Id.*

 An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (quoting *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)); *State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980). However, in this case, the

pre-trial identification of Tisdale by the three tellers was admissible because the televised bond hearing and newspaper article were non-governmental sources of the suggestiveness.

In excluding improper identification testimony the primary evil to be avoided is a "very substantial likelihood of irreparable misidentification." ... It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

*Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (quoting *Simmons,* 390 U.S. at 384, 88 S.Ct. 967).

"[R]eliability is the linchpin in determining the admissibility of identification testimony...." *Manson,* 432 U.S. at 114, 97 S.Ct. 2243 (citation omitted); *see also State v. Jones,* 273 S.C. 723, 729, 259 S.E.2d 120, 123 (1979). However, "[t]he purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available...." *Neil,* 409 U.S. at 199, 93 S.Ct. 375. Therefore, the impetus behind the harsh remedy of exclusion is police deterrence. Although the reliability of an identification may be affected by media identification, no police deterrence would be achieved by excluding evidence where there has been no governmental involvement. Thus, we hold that the *Neil* analysis is inapplicable where there is a nongovernmental identification source.

A number of other jurisdictions have held media identifications of an accused do not constitute identification procedures for analysis under *Neil* and its progeny. *See United States v. Peele,* 574 F.2d 489 (9th Cir.1978); *United States v. Zeiler,* 470 F.2d 717 (3d Cir.1972); *State v. Smith,* 681 So.2d 980, 986 (La.App.1996) ("[t]he viewing of television news coverage of a defendant's arrest is not an 'identification procedure'")(citing *State v. Daughtery,* 563 So.2d 1171 (La.App.1990)); *State v. Lawrence,* 700 S.W.2d 111 (Mo.Ct.App.1985) ("When the source of the alleged taint is not governmental, the balancing

test under *Stovall* and *Simmons* is not applicable."); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988).

It is uncontested that the media identifications in this case were suggestive. *See Simmons*, 390 U.S. at 383, 88 S.Ct. 967 (identifications arising from single photo displays are generally viewed with suspicion); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (show-ups, or showing a person singly for identification, are widely condemned); *State v. Patrick*, 318 S.C. 352, 457 S.E.2d 632 (Ct.App.1995) (witness's prior identification of defendant, which occurred in a courtroom while the defendant was being tried for another crime, contained a degree of suggestiveness). However, because the police were not involved in the media identifications in this case, the trial judge did not err in allowing the tellers' identification testimony.

Courts that have rejected the *Neil* analysis have also recognized the possibility of a case "where the mind of a witness is so clouded by suggestions from nongovernment sources that a conviction based principally on the testimony of that witness violates due process." *Peele*, 574 F.2d at 491; *Lawrence*, 700 S.W.2d at 112 ("We recognize that a case might arise in which an identification of a defendant is so clouded by outside nongovernmental sources as to be totally unreliable as a matter of law...."); *see also State v. Coburne*, 10 Wash.App. 298, 518 P.2d 747, 753 (1973) ("[t]he publication of [a] newspaper picture is considered an 'unarranged' photo show up. Conceivably, viewing it could have implanted a suggestion to the [ ] eyewitnesses").

■ We are not convinced that the identification testimony admitted in this case violated due process. All the tellers were fully cross-examined regarding their descriptions and the suggestiveness of the media identification. "The extent to which a suggestion from nongovernment sources has influenced the memory or perception of the witness, or the ability of the witness to articulate or relate the identifying characteristics of the accused, is a proper issue for the trier of fact to determine." *Peele*, 574 F.2d at 491; *see also Kubat v. Thieret*, 867 F.2d 351, 359 (7th Cir.1989) ("although [the witness] expressed concern about seeing the picture in the newspaper, she testified at trial only [the defendant] looked like the man

in the bar, and her concerns about the newspaper were disclosed to the jury—thus her concerns went to weight not admissibility"); *Zeiler*, 470 F.2d 717 (When "there is no evidence that law enforcement officials encouraged or assisted in the impermissive identification procedures, the proper means of testing eyewitness identification is through cross-examination."); *Brown*, 528 N.E.2d at 532 ("The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state.... In the facts before us, there was no state action. Hence, *Manson* is inapplicable here. The alleged suggestiveness of the identification, therefore, goes to weight and reliability of the testimony rather than admissibility. Moreover, any prejudicial effect of the testimony could have been cured by effective cross-examination. The testimony was properly admitted.").

The amount of time between the robbery and the media identification was short, less than twenty-four hours. The tellers all testified that they had ample time to observe the robber. Vannice testified she never took her eyes off the robber for the entire forty-five seconds during which the robbery occurred. She also stated that she was about three feet away from the robber. Mood testified that she was inches away from the robber as he pointed a gun at her and demanded the money. She stated she had an unobstructed view of the robber and that the bank was well-lit. She testified to looking at the robber for approximately thirty seconds during the incident. Crawford testified that she was only a few feet from the robber. She stated she focused on the robber the entire time "[b]ecause it stuck in [her] head to get as much information or as much a description as [she] probably [sic] could to tell the police."

Mood, Vannice and Crawford all testified they were certain of their identifications. In making their identifications, all three tellers mentioned the robber's distinctive chin structure. Crawford testified that the robber's chin structure was the only facial feature she recalled. Mood also maintained she told the police about the robber's distinctive chin structure, but it was not included in the written statement. Vannice testified to noticing the robber's chin structure, but stated that she didn't describe it to the police because she "didn't think it was necessary."

The only direct evidence of the crime was the videotape of the robbery and the three tellers' identifications. However, there was other circumstantial evidence against Tisdale. Tisdale's car was seen in the area around the time of the robbery. Fanning, the only other eyewitness, identified a car belonging to Tisdale and stated that the driver "looked like a black male." The robber used a "light tan" or "beige" or "brown" grocery bag in the robbery. A plastic Piggly Wiggly grocery bag was found in the trunk of Tisdale's car. Finally, Major Russell Bernard testified he identified a scar on Tisdale's arm from the bank videotape, and close-up photos of the scar were admitted into evidence at trial. Because the tellers were fully cross-examined concerning their identifications and other evidence against Tisdale was presented during the trial, Tisdale's due process rights were not violated by the admission of the identification testimony. Therefore, we affirm the trial court's allowance of the identification testimony.[3]

## II Violation of Sequestration Order

Tisdale also asserts the trial court erred by refusing to grant a mistrial based on David Rykowski's violation of the sequestration order. We disagree. "The decision to grant or deny a motion for a mistrial is a matter within a trial court's sound discretion, and such a decision will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." *State v. Council,* 335 S.C. 1, 12, 515 S.E.2d 508, 514

---

3. On appeal, Tisdale objects to the police's use of a photographic show-up rather than a nonsuggestive line-up after the media identification. The photographic show-up may have been suggestive. *See Simmons,* 390 U.S. at 383, 88 S.Ct. 967 (identifications arising from single photo displays are generally viewed with suspicion). Furthermore, the use of a nonsuggestive line-up "would have enhanced the force of the identification at trial and would have avoided the risk that the evidence would be excluded as unreliable." *Manson,* 432 U.S. at 117, 97 S.Ct. 2243. However, we need not address whether the in-court identifications were impermissibly tainted by the police photographic show-up because the objection was not raised to nor ruled upon by the trial court. *See State v. Williams,* 303 S.C. 410, 401 S.E.2d 168 (1991) (issue must be raised to and ruled on by the trial judge to be preserved for appellate review); *State v. Hoffman,* 312 S.C. 386, 440 S.E.2d 869 (1994) (an issue which is not properly preserved cannot be raised for the first time on appeal).

(1999); *State v. Cabbagestalk,* 281 S.C. 35, 314 S.E.2d 10 (1984).

■■■■ The trial court may order the sequestration of witnesses upon its own motion or by motion of any party. Rule 615, SCRE. A party is not entitled to have witnesses sequestered as a matter of right. The decision to sequester witnesses is left to the sound discretion of the trial judge. *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981); *State v. Harris,* 275 S.C. 463, 272 S.E.2d 636 (1980); *State v. LaBarge,* 275 S.C. 168, 268 S.E.2d 278 (1980); *State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819 (Ct.App.1998) (allowing the State to recall a reply witness who was present in the courtroom during a portion of the trial). "Whether a witness should be exempted from a sequestration order is within the trial court's discretion." *Gattison v. South Carolina State College,* 318 S.C. 148, 456 S.E.2d 414, 415 (Ct.App.1995) (citing *Constant v. Spartanburg Steel Prods. Inc.,* 316 S.C. 86, 447 S.E.2d 194 (1994)).

David Rykowski, a former sales manager at "Your Car Store," was scheduled to testify that he sold a brown Cadillac to Tisdale fourteen days before the bank robbery. Tisdale's brown Cadillac with the yellow "Your Car Store" license tag had been identified previously as the car in the alley behind the bank near the time of the robbery. At trial, Tisdale moved to sequester all the State's witnesses. The trial judge granted the motion with the exception of two law enforcement officers who were allowed to remain in the courtroom. Rykowski was not sequestered during opening arguments.

During Rykowski's direct examination, the following exchange occurred:

Q: When Mr. Tisdale came in to purchase the car, do you recall any articles of clothing that he was wearing at the time?

[Tisdale's counsel objects and the trial court overrules the objection]

A: I do remember it was a—I don't know what type of clothing it was, but I do remember a Miami Hurricanes orange and green sweat shirt, jacket, you know. What it was, I don't know, but I do remember the emblem.

The solicitor showed Rykowski one of the pictures taken from the videotape of the robbery and asked if the outerwear worn by the robber in the picture was similar to the jacket Tisdale wore when buying the car. Rykowski agreed that the emblem on the robber's jacket was like the emblem on Tisdale's outerwear the day Tisdale bought the car. On cross-examination, Rykowski admitted that he did not remember Tisdale's distinctive outerwear until it was mentioned in the opening arguments.

After Rykowski testified and outside the jury's presence, Tisdale's counsel noted

> [b]efore Mr. Rykowski testified, one thing we had not been made aware of and I guess Mr. Rykowski did not know was about his testimony about the Miami Hurricanes outfit, we thought he was subject to the sequestration order, apparently, the opening argument jarred some sort of dormant memory that he had about Mr. Tisdale's clothing.
>
> I approached the bench before his testimony to say we object to that as being information in violation, essentially, of the sequestration order.
>
> My understanding at that time you [sic] were going to allow it to come in and we noted the objection when he testified to that part of it and I think that clears it up.

The trial court responded that it was not going to "step in and take that drastic of action [sic] unless there was a flagrant, intentional, violation of sequestration and obviously that was not the case."

■ The trial court did not abuse its discretion in refusing Tisdale's motion for mistrial. "The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way." *State v. Beckham*, 334 S.C. 302, 310, 513 S.E.2d 606, 610 (1999)(citing *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998)). Rykowski's testimony corroborated Vannice and Crawford's identifications and helped establish Tisdale as the person in the bank's surveillance video. However, Tisdale was not entitled to Rykowski's sequestration as a matter of law. Furthermore, Tisdale's counsel cross-examined Rykowski concerning the fact that he did not remember Tisdale's Miami Hurricanes outerwear until after he had heard

opening arguments. Although the contested portion of Rykowski's testimony strengthened the State's case, the fact that he did not remember the distinctive Miami Hurricanes outerwear until opening arguments affected Rykowski's credibility and the weight of his testimony. The weight a witness's testimony should be given and the assessment of a witness's credibility is the province of the jury. *Johnson v. Painter,* 279 S.C. 390, 307 S.E.2d 860 (1983); *Hill v. Polar Pantries,* 219 S.C. 263, 64 S.E.2d 885 (1951); *Hutson v. Cummins Carolinas, Inc.,* 280 S.C. 552, 314 S.E.2d 19 (Ct.App.1984). We hold the trial court did not abuse its discretion in denying Tisdale's motion for mistrial.

### *CONCLUSION*

Because there was no governmental involvement in the suggestive identification in this case, the trial court did not abuse its discretion in allowing the tellers' in-court identification testimony. Furthermore, the trial court did not abuse its discretion in denying Tisdale's motion for a mistrial. Therefore, the judgment of the trial court is

**AFFIRMED.**

CURETON, HEARN and HOWARD, JJ., concur.