THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Earl Goins,       
Appellant.
 
 
 

Appeal From York County
Henry F. Floyd, Circuit Court Judge

 
 Unpublished Opinion No. 2003-UP-060
 Heard September 11, 2002 - Filed January 21, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Katherine Carruth Link, of Columbia, for appellant.
Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, 
 Attorney General Charles H. Richardson and W. Rutledge Martin, all of Columbia; 
 and Solicitor Thomas E. Pope, of York, for respondent. 
 
 
 

PER CURIAM: A jury convicted Earl Goins of two counts of criminal 
 sexual conduct (CSC) and four counts of lewd act on a minor, and the trial court 
 sentenced him to consecutive 20-year terms of imprisonment for CSC and concurrent 
 15-year terms for the lewd acts. Goins appeals, arguing the trial court erred 
 in failing to sequester the two victim-witnesses, and in admitting evidence 
 of other bad acts. We affirm. 
FACTS/PROCEDURAL HISTORY
The victims, "S" and "B", were twelve and fourteen years old, respectively, 
 when Goins allegedly abused them. A York County grand jury indicted Goins for 
 CSC and lewd act upon a minor stemming from criminal acts said to have occurred 
 on January 23, 1999. At trial in April 2000, the boys testified as follows. 

S first testified Goins, who knew S's father, initially had befriended him 
 and given him several presents, including clothes, camping gear, a rifle, and 
 money. According to S, on several occasions he spent the night at Goins' home, 
 and Goins took pictures of him and showed him a pornographic video containing 
 scenes of a man engaging in sex with prostitutes. S further testified that because 
 his father would not take him on camping and fishing trips, Goins offered to 
 take him on such trips.
On February 23, 1999, S invited his friend B to accompany him on a camping 
 trip with Goins. S and B met Goins at his home, but because it was raining that 
 day they all spent the night at Goins' home instead of going camping. S stated 
 they rented and watched two movies from Blockbuster's, one of which was a foreign-language 
 film depicting a "guy having sex with this girl." B testified that on this evening 
 Goins provided both he and S with beer and that they had played a drinking game. 

According to the boys, they played "hide and seek" after the drinking game 
 concluded. S said he was hiding in the closet of a bedroom when Goins found 
 him and threw him onto the bed; when S told Goins he was scared, Goins let him 
 go. S stated Goins then went into the living room and masturbated in front of 
 him and B. After masturbating, Goins told the boys to take off their clothes 
 and he measured each of their penises with a ruler. At this time Goins told 
 the boys he wanted to shave their pubic hair. S testified he went into the bathroom 
 and allowed Goins to shave him, but that B refused. 
S further testified Goins told them to perform oral sex on one another, and 
 that they did so. Goins then had the boys bend over, rubbed gel on them, and 
 asked them to have anal sex with each other. They refused and resumed watching 
 movies. S stated that the next morning Goins told them they should swear on 
 the Bible that they wouldn't tell what happened, and that if they did tell they 
 would go to hell and he'd never take them camping again. 
S also testified that the following weekend, he, B, and Goins went camping 
 at Woods Ferry. During that trip, Goins entered the boys' tent, took off his 
 clothes, and had the boys take off theirs. According to S, Goins then told him 
 and B to lay on their bellies while Goins slid his penis through their legs. 
 S stated Goins told them that "he wouldn't put his penis in our butt[s], because 
 it would hurt." S further recalled that when he later fell asleep, he awoke 
 to find Goins kissing his belly and touching his butt, and stated that later 
 in the morning Goins performed oral sex on him. 
B provided similar testimony to that of S, including recounting the events 
 of January 23, 1999. B affirmed that Goins measured the boys' penises with a 
 ruler, had them perform oral sex on one another, gave them alcohol, and rubbed 
 Vaseline on their buttocks. Additionally, B testified that after S went to sleep, 
 he and Goins performed oral sex on one another. B also testified about the camping 
 trip to Woods Ferry, stating that during the trip Goins rubbed on him and S 
 and put his penis through their legs. According to B, he and Goins also performed 
 oral sex on one another during the camping trip. 
Over Goins' objection, another alleged victim, "T," was allowed to testify. 
 T, about fourteen when he first met Goins in the summer of 1994, testified Goins 
 took him on camping trips and that he often stayed at Goins' home. He described 
 Goins' home as "pretty much a party house" where he and his friends could stay 
 and drink alcohol provided by Goins. Like the others, T averred Goins bought 
 him gifts and gave him money from time to time. 
T testified that Goins' abuse began one night when he was staying at Goins' 
 house. At the time, he awoke to find Goins performing oral sex on him. When 
 he told Goins to stop, Goins apologized and did. After that incident, T continued 
 to visit Goins. Approximately six months later, Goins again approached as he 
 slept and began performing oral sex. On this occasion, however, T just pretended 
 to be asleep. In addition, T confirmed Goins measured his penis on two or three 
 occasions, took pictures of him naked, and showed him pornographic movies. In 
 all, T testified he had contact with Goins from 1994 until 1997, and that Goins 
 performed oral sex on him approximately twenty times during that period. 
To supplement the testimony of S, B, and T, the State presented numerous exhibits 
 obtained from a search of Goins' home, including naked photographs of T, photographs 
 of S and B on the Woods Ferry camping trip, and the pornographic film S said 
 Goins had shown him when the two were alone. 
LAW/ANALYSIS
Goins first argues the trial court abused its discretion in refusing his motion 
 to sequester S and B. We disagree. 
"The trial court may order the sequestration of witnesses upon its own motion 
 or by motion of any party." State v. Tisdale, 338 S.C. 607, 616, 527 S.E.2d 
 389, 394 (Ct. App. 2000); Rule 615, SCRE. A party, however, "is not entitled 
 to have witnesses sequestered as a matter of right." Tisdale, 338 S.C. at 616, 
 527 S.E.2d at 394. In particular, "[a] person must not be sequestered from a 
 proceeding adjudicating an offense of which he was a victim." S.C. Code Ann. 
 § 16-3-1550(B) (Supp. 2001). Thus, because both S and B were victim-witnesses, 
 the trial court appropriately refused to sequester them. 
Goins also contends the trial court erred in admitting evidence of other bad 
 acts, specifically T's testimony, the videotape and pictures, and S and B's 
 testimony concerning the sexual misconduct that allegedly occurred on the camping 
 trip to Woods Ferry. We find no error. 
The admission of evidence lies within the sound discretion of the trial court. 
 State v. Smith, 337 S.C. 27, 522 S.E.2d 598 (1999). A trial court's ruling on 
 admissibility will not be reversed absent an abuse of discretion or the commission 
 of legal error resulting in prejudice. State v. Hamilton, 344 S.C. 344, 543 
 S.E.2d 586 (Ct. App. 2001). Furthermore, the court's decision regarding the 
 comparative probative value and prejudicial effect of evidence should be reversed 
 only in exceptional circumstances. Id. at 357, 543 S.E.2d at 593. 
"Evidence of other crimes or bad acts is inadmissible to prove the bad character 
 of the defendant or that he acted in conformity therewith. Such evidence is 
 admissible, however, when it tends to establish motive, identity, a common scheme 
 or plan, the absence of mistake or accident, or intent." State v. Beck, 342 
 S.C. 129, 135, 536 S.E.2d 679, 682 (2000); see Rule 404(b), SCRE; State v. Lyle, 
 125 S.C. 406, 118 S.E. 803 (1923). When evidence is offered as proof a common 
 scheme or plan, a close degree of similarity or connection between the prior 
 bad act and the present crime is necessary. State v. Ford, 334 S.C. 444, 513 
 S.E.2d 385 (Ct. App. 1999). Where the other crime or bad act is of such a close 
 similarity to the charged offense that it enhances the probative value of the 
 evidence so as to overrule any prejudicial effect, it is admissible. State v. 
 Parker, 315 S.C. 230, 433 S.E.2d 831 (1993). 
Although Goins was indicted and tried for acts of sexual misconduct occurring 
 on February 23, 1999, we agree with the trial court that evidence of other acts 
 of sexual misconduct toward the boys and T falls within the common scheme or 
 plan exception under Rule 404(b), SCRE, and Lyle. This exception generally is 
 "applied in cases involving sexual crimes, where evidence of acts prior and 
 subsequent to the act charged in the indictment is held admissible as tending 
 to show continued illicit intercourse between the same parties." State v. McClellan, 
 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984) (quoting State v. Whitener, 228 
 S.C. 244, 265, 89 S.E.2d 701, 711 (1955)). Here, the challenged testimony confirmed 
 that Goins engaged in similar sexual misconduct with the same victims within 
 a close proximity of the charged offenses. The trial court, therefore, did not 
 err in finding the probative value of the evidence clearly outweighed its prejudicial 
 effect. See Whitener 228 S.C. at 265, 89 S.E.2d at 711 (finding no error when 
 the trial court allowed the victim to testify to sexual acts occurring on a 
 date different than the charged offense); State v. Weaverling, 337 S.C. 460, 
 523 S.E.2d 787 (Ct. App. 1999) (holding the trial court did not err in admitting 
 evidence of uncharged sexual misconduct where such occurred with the same victim 
 and under similar circumstances as the charged offense). 
As to T, our courts have permitted other bad acts evidence under the common 
 scheme or plan exception when it has a close degree of similarity or connection 
 with the charged offense. See McClellan, 283 S.C. at 389, 323 S.E.2d at 772 
 (allowing three daughters to testify against father being tried for sexual abuse 
 of only one because all were abused in a similar manner under similar circumstances); 
 State v. Adams, 323 S.C. 139, 504 S.E.2d 124 (Ct. App. 1998) (finding no error 
 in the trial court's admission of evidence regarding Adams' prior abuse of one 
 step-daughter when he was charged with abusing another step-daughter). Here, 
 as the State notes, the acts testified to by T were strikingly similar to the 
 offenses Goins was charged with committing against B and S, and all occurred 
 under similar circumstances, to wit: (1) the first sexual contact occurred while 
 the victims were asleep; (2) Goins provided each with with alcohol; (3) Goins 
 measured each victim's penis; (4) Goins photographed the victims naked; (4) 
 Goins watched pornographic movies with the victims; (5) Goins bought each victim 
 gifts; (6) Goins took all of the victims camping; and (7) the sexual misconduct 
 generally involved oral sex. 
AFFIRMED. 
GOOLSBY, HOWARD, and SHULER, JJ., concur.