709 S.E.2d 668

**The STATE, Respondent,**

v.

**Kenneth Harry JUSTUS, Appellant.**

**No. 26971.**

Supreme Court of South Carolina.

Heard March 3, 2011.

Decided May 9, 2011.

Chief Appellate Defender Robert M. Dudek and Senior Appellate Defender Joseph L. Savitz, III, both of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General J. Anthony Mabry, all of Columbia, and Solicitor David Michael Pascoe, Jr., of Orangeburg, for Respondent.

Justice KITTREDGE.

This is a direct appeal in a death penalty case. Appellant raises one issue, asserting the trial court abused its discretion

in disqualifying one of his two appointed counsel two years prior to his guilty plea to murder. We find no abuse of discretion and affirm.

## I.

On the evening of July 26, 2005, Appellant Kenneth Harry Justus murdered Justin Bregenzer.[1] At the time, Appellant was serving two consecutive life sentences at Lieber Correctional Institute, a maximum security prison, for murdering two convenience store workers in separate armed robberies in Oconee County.[2] Bregenzer had been stabbed eleven times and died from a stab wound to the heart.[3] Appellant was arrested and indicted for Bregenzer's murder, and the State sought the death penalty.[4]

The trial court originally appointed Maite Murphy as second-chair defense counsel in October 2005.[5] Shortly thereafter, in November 2005, and in response to our then recent decision in *State v. Gregory*, 364 S.C. 150, 612 S.E.2d 449 (2005), the solicitor filed a motion entitled "Motion to Have the Court Determine Whether Defense Counsel has an Actual Conflict of Interest." The solicitor's concern stemmed from Murphy's representation of the solicitor's lead investigator,

---

1. Bregenzer's name is also spelled Breganzer in the record on appeal.

2. Appellant murdered Randal Eades and Kitty Smith in separate armed robberies in 1997 and 1998, respectively. He was convicted of both murders and accompanying armed robbery charges and sentenced to two consecutive life sentences and two thirty-year sentences for armed robbery. He pled guilty to all charges.

3. Bregenzer was serving time under the Youthful Offender Act for car breaking and grand larceny and had been moved to Lieber for walking away from litter detail. He was scheduled to be released two months after his murder took place.

4. A trail of blood and several bloody footprints—which matched Appellant's boots—led from Bregenzer's cell to Appellant's cell. Investigators found Bregenzer's blood on Appellant's clothing and his thumbprint, in Bregenzer's blood, on Bregenzer's sink. They also found the shank used to stab Bregenzer in the bottom of his toilet and the matching wooden handle in the sewer system.

5. Appellant's original first-chair counsel, Marva Hardee–Thomas, was excused without objection for personal health reasons and replaced by a former solicitor, Walter Bailey.

Tim Stevenson, in his divorce action. Stevenson was purported to be a potential witness in the prosecution against Appellant.

The trial court conducted an evidentiary hearing on the matter in February 2006. At the hearing, Stevenson testified that he had hired Murphy to represent him in his divorce in June 2005, only a few months prior to Murphy's appointment as Appellant's lawyer. He testified that he hired her for the entire divorce and that he still considered her his lawyer. Further, he testified that she had not withdrawn as his lawyer or notified him that she no longer represented him. Murphy, on the other hand, testified that she had agreed to represent Stevenson only to complete his separation agreement, which had been completed. She acknowledged that she had not sent a formal notice of withdrawal. There was no written agreement between Murphy and Stevenson. Both sides presented expert testimony on the conflict of interest issue.

Ultimately, the trial court removed Murphy from the case, noting that it could "not risk the possibility of Mr. Stevenson being called in this case and needing [sic] to be cross examined," and appointed new second-chair counsel.

More than two and one-half years later, on December 11, 2008, Appellant pled guilty to murder. During the sentencing phase, the trial court sentenced Appellant to death for Bregenzer's murder, citing Appellant's prior murder convictions as the aggravating circumstance. *See* S.C.Code Ann. § 16–3–20(C)(a)(2) (2003) ("The murder was committed by a person with a prior conviction for murder.").

## II.

### A.

Appellant raises one issue on appeal: did the trial court abuse its discretion by disqualifying Appellant's originally appointed second-chair counsel? We hold that it did not.

An accused has the right to the assistance of counsel. U.S. Const. amend. VI; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). "[A] motion to relieve counsel is addressed to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *State v.*

*Gregory*, 364 S.C. 150, 152, 612 S.E.2d 449, 450 (2005) (quoting *State v. Graddick*, 345 S.C. 383, 385, 548 S.E.2d 210, 211 (2001)).

We acknowledge that it is a close question whether Murphy's representation of Stevenson was ongoing or had concluded. Moreover, it is fairly debatable whether Stevenson's potential testimony presented an actual conflict of interest. However, given the conflicting evidence before the trial court, and giving deference to its findings of fact, we find no abuse of discretion in the disqualification of Murphy.

■ We recognize the State's motion came on the heels of our decision in *State v. Gregory*.[6] *Gregory* presents a far more compelling case for relieving counsel than the case before us today. At Gregory's insistence, defense counsel moved to be relieved after informing Gregory of counsel's representation of an assistant solicitor in a divorce action. Gregory believed his counsel and the solicitor's office were "in cahoots." Finding no prejudice to counsel's continued representation of Gregory, the trial court denied the motion to relieve counsel. We reversed, finding "Gregory's attorney had an actual conflict because he placed himself in a 'situation inherently conducive to divided loyalties' by simultaneously representing Gregory and the assistant solicitor who was handling his criminal case." *Id.* at 154, 612 S.E.2d at 451. Notwithstanding the distinguishing features in *Gregory*, we cannot say the decision to relieve Murphy amounted to an abuse of discretion.[7]

## B.

We note Appellant was ultimately represented by attorneys with substantial death penalty experience, Walter Bailey and

---

6. *Gregory* was filed in April 2005, only months before Appellant was indicted.

7. In light of the fundamental nature of the Sixth Amendment right to counsel and the prosecutor's duty to seek justice, the State must exercise caution in this area. It is the threat of an actual conflict that justifies the State's effort to deprive an accused of his counsel; hypothetical or speculative conflicts are insufficient. Different considerations are at play when an accused seeks to relieve his or her counsel, as *Gregory* illustrates.

Norbert Cummings. Appellant had long expressed a desire to plead guilty and to receive the death penalty. The trial court conducted an extensive guilty plea *voir dire*,[8] including numerous questions which revealed Appellant's complete satisfaction with Bailey and Cummings.[9]

## III.

### Proportionality Review

We review the proportionality of Appellant's sentence in accordance with South Carolina law. S.C.Code Ann. § 16–3–25 (2003). The aggravating circumstance in this case is a prior conviction for murder, for which section 16–3–20(C)(a)(2) permits the imposition of the death penalty. We find the record establishes that the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of other decisions in which a defendant was sentenced to death when he had a prior conviction for murder demonstrates that Appellant's death sentence is neither excessive nor disproportionate. *See State v. Motts*, 391 S.C. 635, 707 S.E.2d 804 (2011) (Shearouse Adv. Sh. No. 10 at 45); *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990).

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.

---

8. Prior to Appellant's guilty plea, the trial court held a *State v. Blair*, 275 S.C. 529, 273 S.E.2d 536 (1981), hearing to determine whether Appellant was competent to plead guilty and to assist his attorneys in his defense. The trial court found that Appellant was competent, and there is no suggestion to the contrary.

9. Prior to the guilty plea hearing, Appellant had instructed his attorneys not to present any mitigating evidence. Nonetheless, Bailey and Cummings investigated possible mitigating circumstances and prepared to introduce evidence in that regard. They even sought ethical advice on the potential presentation of mitigating evidence notwithstanding Appellant's instructions. In the sentencing phase, Appellant wrote a note to the trial court, which stated, "[I] ask that you punish me to the fullest extent of the law, this being the death sentence. I truly believe this punishment is the only just punishment for the crime I've committed."