**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Bobby J. Barton, Appellant.

Appellate Case No. 2010-169826

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2013-UP-058
Heard January 8, 2013 – Filed January 30, 2013

**AFFIRMED**

Appellate Defender LaNelle Cantey DuRant, of South
Carolina Commission on Indigent Defense, of Columbia,
for Appellant.

Attorney General Alan M. Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Donald J. Zelenka, and
Assistant Attorney General William M. Blitch, Jr., all of
Columbia; and Solicitor W. Walter Wilkins, of
Greenville, for Respondent.

———————

**PER CURIAM:** Appellant Bobby Barton seeks review of his armed robbery conviction. Barton argues: (1) the trial court erred in declining to suppress the victim's identification of Barton because the out-of-court photographic lineup presented to the victim was unreliable; (2) the trial court's jury instruction on the accuracy of an eyewitness identification was incomplete; (3) the jury instruction on armed robbery placed undue emphasis on the phrase "representation of a weapon;" and (4) the trial court should have relieved Barton's attorney because she violated a confidence at the pre-trial hearing. We affirm.

1. As to Barton's motion to suppress the victim's identification, the trial court properly denied the motion. *See State v. Liverman*, 398 S.C. 130, 137-38, 727 S.E.2d 422, 425 (2012) ("Generally, the decision to admit an eyewitness identification is at the trial judge's discretion and will not be disturbed on appeal absent an abuse of discretion."). Here, the trial court did not abuse its discretion in declining to suppress the identification and allowing the jury to assess the reliability of the identification because the photographic lineup was not unduly suggestive. *See id.* at 138, 727 S.E.2d at 426 (recognizing the two-pronged inquiry to determine whether due process requires suppression of an eyewitness identification: (1) "whether the identification resulted from unnecessary and unduly suggestive *police procedures*," and (2) "*if so*, whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed" (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)) (emphasis added)); *State v. Cheeseboro*, 346 S.C. 526, 540, 552 S.E.2d 300, 307-08 (2001) ("An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." (citing *Manson v. Brathwaite*, 432 U.S. 98 (1977)))).

Barton argues the photographic lineup was unreliable because the victim had prior exposure to the photograph of Barton that was used in the lineup. Specifically, Barton asserts that the victim's identification was tainted by his prior viewing of a privately published magazine displaying hundreds of mug shots taken in the Greenville area ("Mug Shot" magazine), including Barton's mug shot. However, there is nothing in the record to show that law enforcement was involved in the publication or distribution of the magazine or the victim's viewing of the magazine. The victim testified that there were no representatives of law enforcement with him when he viewed the magazine. Further, nothing in the record shows any design by

the officer conducting the photographic lineup to reinforce the victim's prior identification or even any awareness on the officer's part of the prior identification.

"The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012). In other words, the reliability of an eyewitness identification may be determined by the jury when there is no improper police conduct involved. *Id.* at 726 ("A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place. . . . This deterrence rationale is inapposite in cases . . . in which the police engaged in no improper conduct." (citation omitted)); *see also State v. Tisdale*, 338 S.C. 607, 612, 527 S.E.2d 389, 392 (Ct. App. 2000) ("[T]he impetus behind the harsh remedy of exclusion is police deterrence. . . . Thus, we hold that the [*Neil v. Biggers*] analysis is inapplicable where there is a nongovernmental identification source.").

In determining the reliability of the victim's identification of Barton, the jury was allowed to consider the accuracy of the victim's initial description of the robber, the fact that the victim may have been inebriated at the time of the robbery, and the victim's prior viewing of "Mug Shot" magazine, all of which were highlighted during cross-examination of the victim and closing arguments. These circumstances did not require excluding the victim's identification of Barton from the jury's consideration because none of these circumstances were brought about by improper police conduct. *See Tisdale*, 338 S.C. at 613, 527 S.E.2d at 393 ("The extent to which a suggestion from nongovernment sources has influenced the memory or perception of the witness, or the ability of the witness to articulate or relate the identifying characteristics of the accused, is a proper issue for the trier of fact to determine.").

2. As to the trial court's jury instruction on the accuracy of an eyewitness identification, the instruction properly focused the jury's attention on the necessity to find that the identification testimony established Barton as the robber beyond a reasonable doubt. Therefore, no prejudice resulted to Barton from the trial court's failure to quote all of the language in Barton's requested instruction. *See State v. Patterson*, 337 S.C. 215, 234, 522 S.E.2d 845, 855 (Ct. App. 1999) (holding that no prejudice resulted from the trial court's failure to give the identification instruction requested by the defendant because the trial court's instruction

adequately focused the attention of the jury on the necessity for a finding that the testimony identified the defendant as the offender beyond a reasonable doubt). Further, Barton had ample opportunity, through cross-examination and closing arguments, to highlight the circumstances that may have affected the two eyewitness identifications. *See Perry*, 132 S. Ct. at 728-29 (noting systemic safeguards against juries placing undue weight on eyewitness testimony of questionable reliability).

3. As to the jury instruction on armed robbery, the trial court did not place undue emphasis on the phrase "representation of a weapon." *See* S.C. Code Ann. § 16-11-330(A) (2003) ("A person who commits robbery while armed with a . . . deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon, is guilty of a felony . . . ."). Rather, the trial court properly corrected its earlier omission of this phrase from its introduction to the definition of strong arm robbery: "If you find that the State has failed to prove that the Defendant was armed with a deadly weapon or with a representation of a deadly weapon after having alleged that he was armed, then you may consider whether . . . he is guilty of Strong Arm Robbery." *See State v. Mattison*, 388 S.C. 469, 478, 697 S.E.2d 578, 583 (2010) ("A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law.").

The State had a right to insist on this correction, given the victim's testimony that although he did not see the pocketknife that the robber held against his neck, he knew it was a knife because he felt it. *See State v. Hernandez*, 386 S.C. 655, 660, 690 S.E.2d 582, 585 (Ct. App. 2010) ("The evidence presented at trial determines the law to be charged to the jury."). Even if the object held against the victim's neck was not a knife or other deadly weapon, the robber's act of holding the object against the victim's neck was designed to give the victim the impression that the object could inflict death or great bodily harm. *See State v. Heck*, 304 S.C. 345, 346, 404 S.E.2d 514, 515 (Ct. App. 1991) ("A deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm.").

4. As to the motion to relieve trial counsel, the trial court acted well within its discretion in denying the motion. See *State v. Justus*, 392 S.C. 416, 418, 709 S.E.2d 668, 670 (2011) ("[A] motion to relieve counsel is addressed to the discretion of the trial judge and will not be disturbed absent an abuse of

discretion." (citations omitted)); *State v. Childers*, 373 S.C. 367, 372, 645 S.E.2d 233, 235 (2007) (holding that the movant bears the burden to show satisfactory cause for removal). Barton waited until the first day of trial to submit the motion to the trial court, and he did not express a willingness to represent himself. Further, counsel for the State indicated that he had independently gained the information Barton alleged to have been improperly revealed by his trial counsel. Therefore, even if this information was confidential in nature, Barton was not prejudiced by counsel's alleged revelation of the information prior to trial.

**AFFIRMED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**