JUSTICE FEW: I concur in the result reached by the majority. I disagree, however, with two points in the majority’s analysis. I. Removal of Attorneys First, I disagree that a trial court has “discretion” to remove trial counsel over the defendant’s objection as an exercise of the court’s duty to ensure the defendant receives a fair trial. This Court has never before recognized such discretion, nor has any court of which I am aware. In each case cited by the majority to support its holding, the trial court made a specific factual finding that the attorney was legally disqualified due to a conflict of interest or a likelihood the attorney would be a witness at trial. The trial court’s failure to make such specific findings in this case is the error we address in this appeal,[12] and clearly distinguishes each of those cases from this one. The majority has taken those cases far out of their proper context, and the cases do not support the majority’s holding. For example, the majority states “the Sixth Amendment right to counsel is ‘circumscribed by the trial court’s obligation to safeguard the integrity of the proceedings and ensure trials are conducted according to the ethical standards of the profession,’ ” quoting State v. Sanders, 341 S.C. 386, 389, 634 S.E.2d 696, 697 (2000). Sanders, however, involved an allegation the attorney would be called as a “necessary witness” in the trial, and thus was legally disqualified pursuant to Rule 3.7 of the South Carolina Rules of Professional Conduct. Id; see Rule 3.7, RPC, Rule 407, SCACR (providing, “A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness.... ”). In Sanders, we actually reversed the trial court’s decision to remove counsel even though the trial court’s ruling was based on a finding of legal disqualification. 341 S.C. at 390, 534 S.E.2d at 698. Sanders does not support the existence of “discretion” to remove an attorney without any finding of a legal basis for disqualification. Sanders relied on United States v. Howard, 115 F.3d 1151 (4th Cir. 1997), and United States v. Williams, 81 F.3d 1321 (4th Cir. 1996). In Williams, the district court disqualified counsel based on its finding counsel had a conflict of interest. 81 F.3d at 1323. Williams then offered to supply auxiliary counsel to cross-examine the witness whose testimony provided the primary basis for counsel’s conflict, but the district court elected not to permit the arrangement. Id. Later, Williams claimed the witness would not testify because she would assert a privilege, and thus the potential conflict was not a concern. Id. The district court rejected the argument and permitted the government to call the witness. Id. Thus, when the Fourth Circuit stated “disqualification of Williams’s counsel was well within the district court’s discretion,” 81 F.3d at 1325, the appellate court was referring to the trial court’s discretion to reject the arrangement proposed to eliminate the conflict, not discretion to remove counsel when no disqualifying reason existed. In Howard, which the majority in this case quotes directly, the district court made two separate factual findings to support its conclusion counsel was legally disqualified—counsel had a conflict of interest and counsel was likely to be a necessary witness. 115 F.3d at 1155. However, the defendant attempted to waive the conflict and argued counsel would not be required to testify. Id. Reviewing the district court’s decision not to permit the waiver and not to accept the argument counsel would not testify, the Fourth Circuit stated the “right to be represented by an attorney of his own choosing ... is circumscribed by ... the obligation of trial courts to safeguard the integrity of the proceedings before them,” and “a trial court ’must have sufficiently broad discretion to rule without fear that it is setting itself up for reversal on appeal’ if it disqualifies a defendant’s chosen lawyer,” Id. (quoting Williams, 81 F.3d at 1324). Therefore, the “discretion” referred to by the Fourth Circuit is not the discretion to do what the trial court did here, but only that “district courts ‘must be allowed substantial latitude’ in rejecting waivers of this sort.” Id. The majority also relies on State v. Justus, 392 S.C. 416, 709 S.E.2d 668 (2011). In Justus, the “the solicitor filed a motion entitled ‘Motion to Have the Court Determine Whether Defense Counsel has an Actual Conflict of Interest.’ ” 392 S.C. at 417, 709 S.E.2d at 669. The motion was based on the solicitor’s contention that defense counsel represented the State’s lead investigator, who was a potential witness in the case. 392 S.C. at 417-18, 709 S.E.2d at 669. At a hearing on the motion, the defense attorney testified she represented the investigator only for a limited purpose, which had been completed, and she was no longer representing him. 392 S.C. at 418, 709 S.E.2d at 669. The resolution of the motion, therefore, turned on the factual question of whether the defense attorney continued to represent the investigator, and thus whether or not a conflict of interest would arise if he testified. We stated, We acknowledge that it is a close question whether [coun-selj’s representation of [the investigator] was ongoing or had concluded. Moreover, it is fairly debatable whether [the witnesses potential testimony presented an actual conflict of interest. However, given the conflicting evidence before the trial court, and giving deference to its findings of fact, we find no abuse of discretion in the disqualification of [counsel]. 392 S.C. at 419, 709 S.E.2d at 670. The “discretion” to which we referred in Justus was discretion to make the factual finding necessary to determine if a potential conflict of interest existed, not to simply remove counsel with no finding of legal disqualification. As it did with Sanders and Howard, the majority has taken Justus out of context, and Justus does not support the majority’s holding. Based on Sanders, Howard, and Justus, the majority treats the trial court’s ruling to dismiss counsel as one “largely addressed to the trial judge’s discretion,” and states “we believe the trial judge acted ... in accordance with his broad discretionary authority in removing Cottrell’s appointed attorneys.” I strongly disagree with the majority’s characterization of the trial court’s authority. In my opinion, a trial court may not terminate the attorney-client relationship between a criminal defendant and his counsel over the defendant’s objection without first making specific findings that a valid basis for disqualification exists. See generally United States v. Gonzalez-Lopez, 548 U.S. 140, 147-48, 126 S.Ct. 2557, 2563, 165 L.Ed. 2d 409, 419 (2006) (“The right to select counsel of one’s choice ... has been regarded as the root meaning of the constitutional [Sixth Amendment’s] guarantee. ... Deprivation of the right is ‘complete’ when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.”); Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 2533, 45 L.Ed. 2d 562, 572-73 (1975) (“The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.... To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment.”).[13] That does not mean the trial court’s error requires a new trial. First, I would remand this case to the trial court and require the court to make findings as to whether a valid basis for disqualification exists. Even without a remand, however, I would not reverse the trial court and order a new trial. I would instead affirm on the narrow basis that the facts in this record do not require a new trial. As then Solicitor Hembree stated at the hearing the trial court conducted to address this question, this was an “extreme situation.” Prior to the hearing, both Solicitor Hembree and then deputy solicitor Richardson submitted memoranda to the trial court in which they described separate conversations each had with Cottrell’s first and second chair attorneys. Solicitor Hembree’s memo documents the statement of first chair counsel that “in her career practicing law she had never worked with any lawyer more dishonest or unethical than [second chair]” and “she could not wait to get this case concluded just to get away from him.” Deputy Richardson’s memo documents the statement of second chair that first chair “was lazy, not easily motivated, and drank too much.” Deputy Richardson’s memo states second chair “said that he had to take the lead on getting started for this trial because [first chair] would never request discovery, look into getting experts, and investigate the details of the shooting or possibilities of misconduct” by officer McGarry.[14] The trial court met privately with each defense attorney before the hearing. At the hearing, the trial court stated he was able to verify “the memoranda which were provided to me are correct” that both defense attorneys had accused the other of “what I consider to be serious misconduct.” The court explained that “each of defense counsel believed that the allegations were correct” and “both counsel told me that in their opinion ... [Cottrell’s] defense was being jeopardized.” While I believe the trial court erred by not making specific findings, the court explained, “I have been very careful not to go into the specifics ..., but there have been allegations involving dishonesty, unethical conduct, personal problems that should be addressed, all sorts of things that I believe ... would be of grave concern.” In a written order, the trial court stated first chair “made serious allegations of dishonesty and unethical conduct against her co-counsel,” and second chair “challenged [first chair’s] competence, work ethic, and personal life.” The court stated, “Each acknowledged having made the statements against co-counsel and that they believed the statements to be true.” In conclusion, the trial court should have made specific findings on the record, and given that it did not do so, this Court should remand with a requirement that those findings be made now. However, I acknowledge the trial court was in a very difficult position. In ten years as a trial judge in which I presided over hundreds of criminal trials and numerous capital cases, I never faced an “extreme situation” like this. I am not sure how I would have handled it if I had. Reading this record convinces me that a dilemma of this magnitude will almost never arise. While I steadfastly disagree with the majority’s characterization of the trial court’s power to resolve this problem as one of “wide latitude” or “considerable discretion,” I do believe that on these unique facts the failure of the trial court to make specific findings that would form the basis for a legal disqualification does not warrant a new trial. II. Contents of the Jury Note That it is error for a trial court to refuse to inform defense counsel of the contents of a note from the jury should require no explanation. In my view, a trial court has no authority to refuse to inform trial counsel of any information regarding the conduct of a trial. If this Court takes seriously the duty of counsel to provide effective assistance under the Sixth Amendment, then we must also recognize the elementary principle that counsel must have available the information necessary to fulfill that duty. The idea that a trial court may unilaterally decide not to provide such information to trial counsel in any proceeding—-particularly the sentencing phase of a capital trial—is absurd. As to whether this obvious error requires reversal, Cottrell has not articulated any action trial counsel could have taken if the information was disclosed that would have changed the way the trial court conducted the sentencing hearing or altered its outcome. I agree, therefore, with the majority’s conclusion the error was harmless. . Cottrell’s own statement of the issue before us is, "The trial court’s removal of the lawyers appointed to represent [Cottrell], over the objection of both [Cottrell] and his lawyers, and in the absence of any findings justifying this interference with an established attorney-client relationship, violated [Cottrell’s] rights to counsel and due process under the Sixth and Fourteenth Amendments...." Appellant’s Br. 10 (emphasis added). . It makes no difference that counsel was appointed. See Morris v. Slappy, 461 U.S. 1, 23 n.5, 103 S.Ct. 1610, 1622 n.5, 75 L.Ed. 2d 610, 627 n.5 (1983) (Brennan, J., concurring) ("But the considerations that may preclude recognition of an indigent defendant's right to choose his own counsel ... should not preclude recognition of an indigent defendant’s interest in continued representation by an appointed attorney with whom he has developed a relationship of trust and confidence.... [A]n indigent defendant has an important interest in a relationship that he might develop with his appointed attorney.”); see also Cuyler v. Sullivan, 446 U.S. 335, 344-45, 100 S.Ct. 1708, 1716, 64 L.Ed. 2d 333, 344 (1980) (stating, in a different context, "we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers”). . See State v. Cottrell, 376 S.C. 260, 265, 657 S.E.2d 451, 454 (2008) (finding the evidence presented at Cottrell’s first trial supported the "reasonable inference ... that [officer McGarry] reacted in an imper-missibly aggressive manner, physically assaulting and then shooting [Cottrell] when he exercised his constitutional right to walk away” and "evidence in this case presented a jury question whether the arrest was lawful but effectuated through the victim's unnecessary use of violence”).