723 S.E.2d 375

**Marcus HYMAN, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 27105.**

Supreme Court of South Carolina.

Heard Oct. 18, 2011.

Decided March 14, 2012.

38

---

Appellate Defender LaNelle C. DuRant, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General David Spencer, all of Columbia, for Respondent.

Chief Justice TOAL.

Marcus Hyman (Petitioner) appeals the denial of his request for post-conviction relief (PCR) on the ground that his counsel was ineffective. We affirm.

### FACTS/PROCEDURAL BACKGROUND

In June 2007, a grand jury indicted Petitioner for the offenses of distribution of cocaine, third offense, and distribution of cocaine within the proximity of a school or park. In September 2007, Petitioner pleaded guilty to these charges, and after a colloquy with the plea judge, he relinquished various constitutional rights, including his right to a jury trial. The plea judge sentenced Petitioner to the mandatory minimum sentence of fifteen years imprisonment for the distribution charge and ten years for the proximity charge, to run concurrently. No direct appeal was taken. However, Petitioner subsequently filed an application for PCR.

Central to Petitioner's ineffective assistance of counsel claim on appeal is a videotape recording of the drug transaction, forming the basis of his charges, that Petitioner never saw prior to pleading guilty. At the evidentiary hearing, Petitioner testified that, after his arrest, he requested to view all of the evidence in the State's possession. Defense counsel testified that she became aware of the videotape early in her representation of Petitioner when she read Petitioner's arrest warrant. Shortly thereafter, defense counsel informed Petitioner of the existence of the videotape and its alleged content.

Defense counsel subsequently undertook negotiations with the solicitor to work out a plea agreement on Petitioner's behalf.[1] These negotiations ultimately resulted in the solicitor agreeing to reduce the distribution charge to a second offense, in exchange for Petitioner's agreement to serve five years in prison. This offer was conditioned on Petitioner's agreement not to view the videotape due to the involvement of a confidential informant, whose identity the State sought to conceal but would have been revealed to Petitioner if Petitioner watched

---

1. At the plea hearing, defense counsel stated on the record that she repeatedly met with Petitioner to discuss the progress of these negotiations, and at one point she even wrote out the various options available to him.

the videotape.[2] At the evidentiary hearing, defense counsel testified that plea offers conditioned on the nondisclosure of certain evidence in the State's possession were "basically protocol for all drug cases," so as not to "burn[ ] ... [the] confidential informant" unless necessary, or compromise the informant's safety.[3] The solicitor's offer was set to expire on September 18, 2007, at whatever time the plea judge retired for the afternoon.

At the evidentiary hearing, Petitioner testified he repeatedly told defense counsel that he wanted to watch the videotape, and stated that his personal review of the videotape was critical to whether he planned to accept the offer because he wanted to discern whether the videotape depicted his involvement in the drug transaction. To the contrary, defense counsel testified that her notes from conversations with Petitioner during this time reveal that she spoke to Petitioner on August 9, 2007, and again on September 7, 2007, and during both conversations, Petitioner stated he wanted *her* to watch the videotape. Consequently, defense counsel testified, she watched the videotape on September 14, 2007, and testified the videotape "clearly" depicted Petitioner engaged in a drug transaction.[4] Defense counsel relayed these impressions to Petitioner while the five-year offer was still on the table. During this conversation, after defense counsel described the perpetrator as wearing a hat, Petitioner informed her that "it

---

2. At the evidentiary hearing, Petitioner testified that, as he understood the offer, if he chose to plead guilty in exchange for five years imprisonment, he would not be allowed to view the videotape, but if he chose to plead guilty in exchange for ten years imprisonment, the solicitor would allow him to view the videotape. Defense counsel did not recall this characterization of the deal. However, she testified that, at some point during the negotiations, the solicitor offered to make no recommendation on the proximity charge and dismiss the distribution charge if Petitioner agreed to a ten to fifteen year sentence.

3. Petitioner testified that he never received an explanation for why he could not watch the videotape.

4. At the plea hearing, the solicitor told the court that the informant was outfitted with audio and video equipment, and that the videotape depicted Petitioner engaged in the sale and transfer of drugs to the informant in exchange for twenty dollars, which the informant paid in one dollar bills so that the transaction would appear clearly on the videotape.

couldn't possibly be him" in the videotape because he never wore hats. Therefore, defense counsel asked the narcotics officer for still photographs from the videotape, which she showed to Petitioner prior to the expiration of the offer. Petitioner testified he recognized himself as the subject of these photographs, but testified that the images did not show him engaged in a drug transaction.[5] Petitioner still refused to accept the solicitor's offer.

As promised, the offer expired when the plea judge retired on September 18, 2007. The next day, September 19, 2007, the parties picked a jury in Petitioner's trial, with opening statements to follow on September 20, 2007. After jury selection but before his trial began in full, Petitioner pleaded "straight up" to the charges.[6] At the evidentiary hearing, defense counsel testified Petitioner never saw the videotape because he decided not to proceed to trial.[7]

The PCR judge denied Petitioner's application and dismissed it with prejudice. In determining that counsel was not ineffective, the PCR judge noted that defense counsel watched the videotape, Petitioner had the opportunity to see still photographs made from the videotape, and plea counsel met with Petitioner to discuss the charges against him, the punishment he faced, and the negotiations. Furthermore, the PCR judge found defense counsel more credible than Petitioner. The PCR judge stated he was concerned over the seemingly widespread policy of withholding evidence from criminal defendants to allegedly protect the identity of confidential informants, which he described as effectively "impair[ing] a defendant's ability to make an intelligent choice regarding his jury trial rights." However, because counsel watched the video-

---

5. At the plea hearing, defense counsel and Petitioner agreed that the still photographs were made from the videotape, and the plea judge stated on the record that the photographs "obviously" depicted Petitioner.

6. By the time of Petitioner's plea, the identity of the informant had been disclosed to the defense.

7. Petitioner explained he decided to plead guilty because he felt "coerced," stating "I didn't want to go through without seeing the evidence.... [I]f I would have seen the evidence, I wouldn't even took [sic] it to [sic] that far."

tape, the State provided still photographs to Petitioner, and the evidence was not exculpatory, the PCR judge found that Petitioner could not demonstrate that he was prejudiced by not watching the videotape himself.

## ISSUE

Does probative evidence in the record support the PCR court's finding that counsel was not ineffective, even though Petitioner was not provided the opportunity to watch the videotape prior to his guilty plea?

## STANDARD OF REVIEW

In PCR proceedings, the applicant bears the burden of proving the allegations contained in his application. *Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (citation omitted). On appeal, the PCR court's ruling should be upheld if it is supported by "any evidence" of probative value in the record. *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989) (quoting *Webb v. State*, 281 S.C. 237, 314 S.E.2d 839 (1984)). However, reversal is appropriate where the PCR court's decision is controlled by an error of law. *Suber v. State*, 371 S.C. 554, 558–59, 640 S.E.2d 884, 886 (2007) (citation omitted). "This Court gives great deference to the [PCR] court's findings of fact and conclusions of law." *Dempsey v. State*, 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005) (citation omitted).

## LAW/ANALYSIS

Petitioner contends that because he was not provided the opportunity to view the videotape recording of the drug transaction forming the basis of his convictions, he did not enter his guilty plea freely, voluntarily, and knowingly, and as a result, his counsel was ineffective. We disagree.

A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Where allegations of ineffective assistance of counsel are made, the question becomes, 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Butler*, 286 S.C. at 442, 334 S.E.2d at

814 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052). As such, courts evaluate allegations of ineffective assistance of counsel using a two-pronged test. *Cherry,* 300 S.C. at 117, 386 S.E.2d at 625 (citing *Strickland,* 466 U.S. at 668, 104 S.Ct. 2052). First, the applicant must demonstrate counsel's representation was deficient, which is measured by an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. "Under this prong, '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Cherry,* 300 S.C. at 117, 386 S.E.2d at 625 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). Second, the applicant must demonstrate he was prejudiced by counsel's performance in such a manner that, but for counsel's error, there is a reasonable probability the result of the proceedings would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* test operates similarly when an applicant claims counsel was ineffective in the context of a guilty plea. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the guilty plea context, the inquiry with respect to the counsel's alleged deficiency turns on whether the plea was voluntarily, knowingly, and intelligently entered. *Anderson v. State,* 342 S.C. 54, 57, 535 S.E.2d 649, 651 (2000). Furthermore, "[t]he second, or 'prejudice,' requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. Therefore,

> A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial.

*Holden,* 393 S.C. at 572, 713 S.E.2d at 615 (citation omitted). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (citations omitted).

█ When a criminal defendant rejects a plea bargain, we will examine separately whether trial counsel was ineffective with respect to both the defendant's rejection of the offer and his ultimate decision to plead guilty. *Kolle v. State,* 386 S.C. 578, 590, 690 S.E.2d 73, 79 (2010). "In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing." *Suber v. State,* 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007) (citation omitted). Therefore, "the voluntariness of a guilty plea is not determined by an examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record of the PCR hearing." *Roddy v. State,* 339 S.C. 29, 33, 528 S.E.2d 418, 420 (2000) (citation omitted).

## I. Specific Contentions as to the Deficiency in Counsel's Performance

### A. *Waiver*

█ When attempting to determine the voluntary and intelligent nature of a plea, the plea colloquy ordinarily serves as confirmation that a criminal defendant is waiving the right to raise certain constitutional claims by pleading guilty. *See Rivers v. Strickland,* 264 S.C. 121, 213 S.E.2d 97, 98 (1975) ("The general rule is that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea. An accused also waives the right to trial and the incidents thereof and the constitutional guarantees with respect to criminal prosecutions.") (citation omitted). However, "[g]iven the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)) (alterations in original). Specifically, "a defendant entering a guilty plea must be aware of the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the consti-

tutional rights being waived." *Anderson v. State*, 342 S.C. 54, 57, 535 S.E.2d 649, 651 (2000) (emphasis removed) (citing *State v. Hazel*, 275 S.C. 392, 271 S.E.2d 602 (1980)).

■ At the evidentiary hearing, the PCR judge found defense counsel to be more credible than Petitioner. *See Solomon v. State*, 313 S.C. 526, 443 S.E.2d 540 (1994) (appellate court deference to PCR judge's credibility findings is so great that it required the Court to uphold PCR judge's determination even where testimony at PCR hearing was unequivocally contradicted by the trial record). Through this lens, then, we find that Petitioner had a full understanding and awareness of both the circumstances surrounding the plea negotiations and the implications of rejecting the State's offer. Moreover, the record reveals that Petitioner was aware of the consequences of pleading guilty, rather than proceeding to trial, and voluntarily and intelligently relinquished his constitutional rights to a jury trial and all other attendant trial rights during the plea proceeding. However, insofar as Petitioner argues that the nondisclosure of the videotape renders his waiver involuntary, we address those concerns below.

### B. Alleged Brady Violation

To the extent Petitioner argues, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that a criminal defendant may never enter a plea voluntarily without the State first disclosing all of the evidence in its possession, we disagree and hold that no *Brady* violation occurred in this case.

■ "The *Brady* disclosure rule requires the prosecution to provide to the defendant any evidence in the prosecution's possession that may be favorable to the accused and material to guilt or punishment." *Porter v. State*, 368 S.C. 378, 384, 629 S.E.2d 353, 356 (2006) (citation omitted). *Brady* evidence is either favorable exculpatory evidence or favorable impeachment evidence. *Porter*, 368 S.C. at 384, 629 S.E.2d at 356 (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "Materiality of evidence is determined based on the reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense." *Id.* (citing *Kennerly*, 331 S.C. at 453, 503 S.E.2d at 220). A "reasonable probability" is

demonstrated when the suppression "undermines confidence in the outcome of the trial." *Id.* (quoting *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375). The State must disclose *Brady* evidence even when a criminal defendant does not specifically request the evidence. *Id.* (citing *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

In *Gibson v. State,* 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999), we held that an applicant "may challenge the voluntary nature of his guilty plea in a PCR action by asserting an alleged *Brady* violation." (citation omitted); *see, e.g., State v. Hill,* 368 S.C. 649, 657, 630 S.E.2d 274, 279 (2006) (recognizing the Court's extension of the *Brady* disclosure rule to guilty plea and sentencing procedures). Consequently, we utilized the following framework to evaluate the success of a PCR applicant's claim: (1) whether the evidence in question was favorable to the applicant; (2) whether the prosecution knew of or had the evidence in its possession; (3) whether the prosecution suppressed the evidence; and (4) whether the evidence was material to Petitioner's guilt or punishment. *Gibson,* 334 S.C. at 524, 514 S.E.2d at 324 (citations omitted). We held that these factors applied in the guilty plea context to both exculpatory evidence and evidence to be used for impeachment purposes. *Id.* (citations omitted). Finally, we held "[a] *Brady* violation is material when there is a reasonable probability that, but for the government's failure to disclose *Brady* evidence, the defendant would have refused to plead guilty and gone to trial." *Id.* at 525, 514 S.E.2d at 325 (citations omitted).

Petitioner cannot satisfy any of the factors delineated in *Gibson* to establish a *Brady* violation with respect to the videotape. Tantamount to any *Brady* claim is the withholding of evidence. Under the present facts, it is undisputed that the solicitor disclosed the videotape to defense counsel. Therefore, in order to find that this action amounts to impermissible suppression under *Brady,* we must first assume that the Constitution requires disclosure of *Brady* evidence to a criminal defendant *personally.* We are unwilling to make that sweeping assumption, and find that disclosure to defense counsel was satisfactory under the present circumstances. Further, because we deem the manner of disclosure appropriate, Petitioner cannot satisfy the materiality prong of *Brady.*

*See Porter v. State*, 368 S.C. 378, 384, 629 S.E.2d 353, 356 (2006) ("Materiality of evidence is determined based on the reasonable probability that the result of the proceeding would have been different *had the evidence been disclosed to the defense*." (emphasis added) (citing *Kennerly*, 331 S.C. at 453, 503 S.E.2d at 220)). Finally, Petitioner has not proven that the videotape was favorable to him. By all accounts, including defense counsel's testimony, the videotape depicted Petitioner engaged in a drug transaction with a confidential informant. Because the evidence at issue is *inculpatory, Brady* is inapplicable.

Therefore, no violation of *Brady* occurred under these facts.

### C. Rule 5, SCRCrP

In addition, Petitioner argues that, because he was not permitted to watch the videotape personally in violation of Rule 5 of the South Carolina Rules of Criminal Procedure, counsel was ineffective. We disagree.

Rule 5 permits inspection of evidence in the State's possession "which [is] material to the preparation of his defense or [is] intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant" upon request by the defendant. Rule 5(a)(1)(C), SCRCrP.

 Compliance with Rule 5 is a fact-based inquiry. Under the present facts, the State not only disclosed the existence of the videotape, but also made the evidence available for inspection by defense counsel. The State even took the extra step of generating still photographs to assuage Petitioner's concerns about the contents of the videotape. Plea negotiations were ongoing until the day before jury selection, and there is no indication that the State would have withheld the videotape if a full trial on the merits followed. In fact, the identity of the informant had been disclosed to the defense by the time Petitioner pleaded guilty, removing any remaining impediment to Petitioner's access to the videotape in time for his trial. We note that, in cases involving a confidential informant, a criminal defendant's interest in access to certain evidence must be weighed against the State's interest in protecting the identity and safety of the informant. *See State v. Humphries*, 354 S.C. 87, 90, 579 S.E.2d 613, 614–15 (2003) ("Although the State is generally privileged from

revealing the name of a confidential informant, disclosure may be required when the informant's identity is relevant and helpful to the defense or is essential for a fair determination of the State's case against the accused. For instance, if the informant is an active participant in the criminal transaction and/or a material witness on the issue of guilt or innocence, disclosure of his identity may be required depending upon the facts and circumstances." (internal citations omitted)). Here, the State struck the appropriate balance by allowing defense counsel to view the videotape and providing Petitioner with stills during negotiations. Therefore, under these circumstances, the manner and extent of disclosure to defense counsel was satisfactory under Rule 5 of the South Carolina Rules of Criminal Procedure.

Accordingly, it cannot be said that defense counsel acted unreasonably in failing to seek to compel disclosure of the videotape to defendant personally under the facts of this case.

## II. Prejudice

 Likewise, Petitioner fails to prove how he was prejudiced by his counsel's alleged deficient performance. At the PCR hearing, Petitioner stated that if he had seen the videotape, he would not have "took it ... that far." In other words, if he had seen the videotape, he would have chosen to plead guilty earlier.

To show prejudice, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial." *Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011) (quoting *Rolen v. State*, 384 S.C. 409, 413, 683 S.E.2d 471, 474 (2009)). In *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the United States Supreme Court explained:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change

his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

(citation omitted).

The PCR judge found that Petitioner was not prejudiced because the evidence was not exculpatory. Probative evidence in the record supports the PCR judge's findings. Petitioner was fully aware of the inculpatory nature of the videotape throughout the negotiations and the guilty plea proceedings. Consequently, Petitioner has failed to prove how the outcome would have been different had he chosen not to plead guilty until after he watched the videotape himself. Accordingly, counsel was effective.

## CONCLUSION

For the reasons stated above, we affirm the PCR court's dismissal of Petitioner's application.

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.