# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Travis Hines, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2017-002632

---

## ON WRIT OF CERTIORARI

---

Appeal From York County
R. Lawton McIntosh, Circuit Court Judge

---

Opinion No. 5877
Heard April 13, 2021 – Filed December 8, 2021

---

## AFFIRMED

---

Clarence Rauch Wise, of Greenwood, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Michael Jacob Neubauer, both of
Columbia, for Respondent.

---

**KONDUROS, J.:** In this post-conviction relief (PCR) action, Travis Hines
(Petitioner) appeals the denial of his PCR application as to his guilty plea for
distribution of heroin, third offense. He contends he did not waive his right to
counsel with a full understanding of his rights and the consequences of self-
representation. Petitioner also maintains the PCR court erroneously found the

State "turned over all evidence as [it] received it" because the State did not allow Petitioner to view video evidence that allegedly depicted him involved in a controlled drug purchase.  We affirm.

**FACTS/PROCEDURAL HISTORY**

A grand jury indicted Petitioner for distribution of heroin.  At a December 15, 2015 hearing, the State informed the circuit court Petitioner "was previously before the [c]ourt last term to enter . . . a [guilty] plea . . . .  He informed the [c]ourt at that time that he was unhappy with [his attorney, Chris] Wellborn[,] as his counsel.  So this hearing has been scheduled on . . . a motion to relieve counsel . . . ."  Petitioner confirmed he wanted to relieve Wellborn and that he was "prepared to go forward without a lawyer."  Petitioner clarified, however, that he intended to hire another attorney.  The State indicated it planned to serve Petitioner with notice of its intent to seek a life without parole (LWOP) sentence immediately after the hearing, and it planned to call Petitioner's case for trial the following month.  Petitioner stated he understood his case would be called for trial the following month and still wanted to relieve Wellborn.  The circuit court relieved Wellborn as Petitioner's counsel.  Petitioner acknowledged he originally had a court-appointed attorney before hiring Wellborn.  The circuit court stated, "[Y]ou have been through two lawyers.  The [c]ourt would not appoint you any more lawyers."  The court then stated:

> At some point if you don't have an attorney I will have to
> go through and warn you in detail about representing
> yourself because that will be . . . what you are left with.
> If you have not hired an attorney by [next month], . . .
> we'll go over and make sure [you] understand your right
> about representing yourself.

Petitioner responded, "Okay."  The State served Petitioner with its intent to seek an LWOP sentence and stated a fifteen-year plea offer would expire "at the conclusion of this [c]ourt term."  The State explained Petitioner was eligible for an LWOP sentence due to prior convictions for distribution of ecstasy within proximity of a school and distribution of cocaine within proximity of a park.

A plea waiver form, signed by Petitioner on December 15, 2015, the same day as the hearing, informed Petitioner of his right to an attorney.  It stated, "I understand an attorney would be of benefit to me, and since I am not an attorney, there is a danger in my representing myself."  Petitioner initialed next to the warning.  At a December 17, 2017 plea hearing, Petitioner appeared pro se.  The State confirmed

Petitioner was pleading guilty to distribution of heroin, third offense, "a statutory felony that carries with it no less than ten years [and] up to thirty years and a possibility of a fine up to [f]ifty thousand dollars." The State also noted Petitioner's charge was "a serious offense." The State indicated it was dismissing "an accompanying proximity charge" and Petitioner was pleading to a negotiated sentence of fourteen years' imprisonment. The State declared that after speaking with Petitioner following the December 15 hearing, it "ha[d] no doubt in [Petitioner's] intelligence or his understanding of the proceedings." The State informed the plea court Petitioner "indicated . . . he wishe[d] to proceed on his own." The plea court and Petitioner had the following exchange:

> [The court]: [Petitioner], how old are you?
>
> [Petitioner]: Twenty-nine.
>
> [The court]: How far did you go in school?
>
> [Petitioner]: I'm in college right now.
>
> . . . .
>
> [The court]: What do you do -- Do you have a job too?
>
> [Petitioner]: Yes, sir.
>
> [The court]: What do you do?
>
> [Petitioner]: I'm an electrician's helper.
>
> [The court]: You have a right to have an attorney represent you in regard to this charge[,] and if you cannot afford one[,] the State would be required to appoint an attorney to represent you within some limits. That is[,] you would be appointed an attorney to represent you if you wish. If you could not afford one[,] the limitation being that you are assigned an attorney and that would be your attorney. It[']s dangerous for you to proceed without an attorney since you're not

> one and there is a benefit in having an attorney represent you. Do you understand that?
>
> [Petitioner]: Yes, sir.
>
> [The court]: Do you wish to have an attorney in regard to this charge or give up that right?
>
> [Petitioner]: I give up that right.
>
> [The court]: I find [Petitioner] has freely[,] voluntarily[,] knowingly[,] and intelligently[,] understanding the benefits of counsel and the danger of self[-]representation[,] exercise[d] his right to proceed pro s[]e.

The plea court informed Petitioner of the charge against him, its potential sentence, and the consequences of the charge being classified as "serious." Petitioner stated he understood and wished to plead guilty. Similarly, Petitioner stated he understood his trial-related rights and wished to waive them by pleading guilty. The plea court accepted Petitioner's plea and the negotiated sentence. Petitioner pled guilty to distribution of heroin, third offense, and the plea court sentenced him to a negotiated sentence of fourteen years' imprisonment.

Petitioner did not directly appeal; however, he filed an application for PCR. At his PCR hearing, Petitioner explained that at his first plea hearing, the court would not accept his plea because he stated he was not satisfied with Wellborn's representation. He added, "I never really wanted to fire him but when the [court] asked me that[,] that's what happened." Petitioner testified,

> We never had a hearing after that to ask me why I didn't want him to be my lawyer or anything like that. The next time I was in court[,] all I knew is I was relieving Mr. Wellborn and I was going pro se. I never wanted to go pro se. I said I was going to get a lawyer. So obviously I didn't want to proceed pro se. I know nothing about the law.

Petitioner asserted he attempted to hire another attorney but was unable to do so because his trial date was approaching and the amount of time was insufficient for the attorney to prepare for trial. He stated he then decided to plead guilty because he could not prepare for trial himself and his plea offer would soon expire. Petitioner testified he had discussed with the State that he "didn't want to go to jail for a long time" and "had kids." He testified the State "scratched out the [fifteen] and put [fourteen] and said that's the best I can do for you." When asked what he understood about proceeding without an attorney, Petitioner answered, "Nothing really. I just knew if I didn't go ahead and take the plea they were going to give me [LWOP]." Petitioner alleged he was not made aware of the dangers of proceeding without counsel. Specifically, Petitioner stated the plea court did not make him aware of his right to a direct appeal and did not question him as to if he actually wanted to proceed pro se and why he did not have a lawyer. Petitioner asserted that if the PCR court granted his application, he "would definitely go to trial," despite his exposure to an LWOP sentence.

Petitioner testified he did not review his discovery materials with Wellborn. He stated, "Really we were waiting on the video tape. That's all it was. We were waiting on the video tape. We couldn't take a plea." Petitioner testified he and Wellborn discussed waiting to view the video before deciding whether to plead guilty. He stated he hired Wellborn in April 2015, but the State did not allow Wellborn to view the video until November 2015. Petitioner stated he "learned [from Wellborn] that [he] was on the video but . . . there was basically no drug transaction." According to Petitioner, the video depicted him "doing something with a plastic bag." He added, "It looked like I probably was messing with drugs." Petitioner testified Wellborn informed him "[he] never gave anybody anything on the tape," but Wellborn nonetheless told him he "looked like [he] was guilty" and advised him to plead guilty.

Wellborn testified he told Petitioner that if the video did not depict a drug sale, that would be a potential defense. He stated he did not feel comfortable or believe it was appropriate to advise Petitioner to plead guilty without first viewing the video. Wellborn explained that when he began representing Petitioner in July 2015, the State's plea offer contemplated a ten-year sentence. However, the State increased the sentence to eighteen years the following month and informed Wellborn no information regarding the informant would be released until Petitioner rejected the plea offer. Wellborn testified the State did not provide "the drug report" to him until October 23, 2015. Similarly, the State only allowed Wellborn to view the video in November 2015, after he signed a protective order to conceal the identity of the confidential informant used in the controlled drug purchase. According to

Wellborn, the video depicted an individual entering Petitioner's home, followed by the audio of a discussion between the individual and Petitioner.  Wellborn stated:

> I think there was a decent chance that jurors hearing the sound would believe that [the] discussion was related to drugs and transactions related to drugs[,] and [Petitioner] was at a table doing something that if the informant testified -- and we expected the informant to testify if [Petitioner] went to trial -- the informant would say he was packaging up drugs[.]

Wellborn testified Petitioner could be seen in a portion of the video "fiddling with a package."  He further testified that because the video was of a controlled purchase, "it would not be an extraordinary circumstantial leap to connect the dots and suggest that [Petitioner] had given the informant the drugs."

Ryan Newkirk, the solicitor who prosecuted Petitioner's case, testified his office's policy was "generally not to release the video of a confidential informant in a drug case unless the defendant is then willing to not accept an offer from the State, especially in cases where the life of the confidential informant could be in danger."  He stated protecting the informant in Petitioner's case "was incredib[ly] important" because previously Petitioner had been convicted of intimidating a witness and also charged with murder.  Newkirk explained he sent Wellborn "still shots of the video" before ultimately allowing him to view the video.

In its order, the PCR court found Wellborn's testimony "credible and persuasive on all matters."  It also found Petitioner failed to prove the State committed prosecutorial misconduct by refusing to disclose discovery materials.

The PCR court also found Petitioner was aware of his right to counsel.  It stated:

> [T]he plea [court] inquired [about Petitioner's] age and educational background where [Petitioner] stated he was twenty-nine years old, still in college, and worked as an electrician's helper.  It is clear [Petitioner] was aware of the nature of the crimes and potential penalties as the plea [court] informed him of this and he was previously served with the State's notice to seek [an LWOP sentence] before negotiating a plea deal with [the State].  This [c]ourt finds that the plea court conducted a proper

[*Faretta*[1]] hearing, after which the plea court found
[Petitioner] freely, voluntarily, knowingly, and
intelligently understood the benefits of counsel and the
dangers of self-representation and exercised his right to
proceed *pro se*.

Accordingly, the PCR court found Petitioner failed to prove "he was not properly advised of his right to counsel and self-representation." The PCR court denied the application for PCR. Petitioner filed a petition for a writ of certiorari, which this court granted.

## STANDARD OF REVIEW

"In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "Our standard of review in PCR cases depends on the specific issue before us." *Mangal v. State*, 421 S.C. 85, 91, 805 S.E.2d 568, 571 (2017). "We defer to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them." *Id.* However, "[w]e do not defer to a PCR court's rulings on questions of law." *Id.* "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law." *Id.* (quoting *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016)). "On review of a PCR court's resolution of procedural questions arising under the Post-Conviction Procedure Act or the South Carolina Rules of Civil Procedure, we apply an abuse of discretion standard." *Id.* at 92, 805 S.E.2d at 571. "This court gives great deference to the PCR court's findings on matters of credibility." *Putnam v. State*, 417 S.C. 252, 260, 789 S.E.2d 594, 598 (Ct. App. 2016).

## LAW/ANALYSIS

### I. Prosecutorial Misconduct

Petitioner argues the PCR court erred in failing to find the State committed misconduct by refusing to show Petitioner the video unless he proceeded to trial. Petitioner asserts he was required to plead guilty before having the opportunity to review the video and he did not waive his right to review the video. He maintains the PCR court erroneously found the State "turned over all evidence as [it] received

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

it" because the State did not allow Petitioner to view video evidence that allegedly depicted him involved in a controlled drug purchase. He avers the State forced him to either accept a plea offer without viewing the video or view it and face an LWOP sentence at trial, which he argues was improper and constituted prosecutorial misconduct. Petitioner contends he could not have made an informed decision about whether to plead guilty without viewing the video and as a result, his guilty plea was not freely and voluntarily given. We disagree.

"A defendant who pleads guilty usually may not later raise independent claims of constitutional violations." *Gibson v. State*, 334 S.C. 515, 523, 514 S.E.2d 320, 324 (1999). "However, 'a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case.'" *Id.* (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)). "When a defendant lacks knowledge of material evidence in the prosecution's possession, the waiver of constitutional rights cannot be deemed knowing and voluntary." *Id.* "Accordingly, [a PCR applicant] may challenge the voluntary nature of his guilty plea in a PCR action by asserting an alleged *Brady*[2] violation." *Gibson*, 334 S.C. at 524, 514 S.E.2d at 324.

> A *Brady* claim is based upon the requirement of due process. Such a claim is complete if the accused can demonstrate (1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment.

*Id.* (footnote omitted).

In *Hyman v. State*, the petitioner argued "because he was not provided the opportunity to view the videotape recording of the drug transaction forming the basis of his convictions, he did not enter his guilty plea freely, voluntarily, and knowingly, and as a result, his counsel was ineffective." 397 S.C. 35, 42, 723 S.E.2d 375, 378 (2012), *abrogated on other grounds by Smalls v. State*, 422 S.C. 174, 181 n.2, 810 S.E.2d 836, 839 n.2 (2018). However, the supreme court disagreed "[t]o the extent Petitioner [was] argu[ing], pursuant to *Brady* . . . , that a criminal defendant may never enter a plea voluntarily without the State first disclosing all of the evidence in its possession." *Id.* at 45, 723 S.E.2d at 380. The court held no *Brady* violation had occurred in the case and explained:

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner cannot satisfy any of the factors delineated in *Gibson* to establish a *Brady* violation with respect to the videotape. Tantamount to any *Brady* claim is the withholding of evidence. Under the present facts, it is undisputed that the solicitor disclosed the videotape to defense counsel. Therefore, in order to find that this action amounts to impermissible suppression under *Brady*, we must first assume that the Constitution requires disclosure of *Brady* evidence to a criminal defendant *personally*. We are unwilling to make that sweeping assumption, and find that disclosure to defense counsel was satisfactory under the present circumstances. Further, because we deem the manner of disclosure appropriate, Petitioner cannot satisfy the materiality prong of *Brady*. *See Porter v. State*, 368 S.C. 378, 384, 629 S.E.2d 353, 356 (2006) ("Materiality of evidence is determined based on the reasonable probability that the result of the proceeding would have been different *had the evidence been disclosed to the defense.*" (emphasis added) . . . )[, *abrogated on other grounds by Smalls*, 422 S.C. at 181 n.2, 810 S.E.2d at 839 n.2]. Finally, Petitioner has not proven that the videotape was favorable to him. By all accounts, including defense counsel's testimony, the videotape depicted Petitioner engaged in a drug transaction with a confidential informant. Because the evidence at issue is *inculpatory*, *Brady* is inapplicable.

*Hyman*, 397 S.C. at 45-47, 723 S.E.2d at 380-81.

Additionally, in *Hyman*, the supreme court disagreed with the petitioner's argument that "because he was not permitted to watch the videotape personally in violation of Rule 5 of the South Carolina Rules of Criminal Procedure, counsel was ineffective." *Id.* at 47, 723 S.E.2d at 381. The court held:

Rule 5 permits inspection of evidence in the State's possession "which [is] material to the preparation of his defense or [is] intended for use by the prosecution as evidence in chief at the trial, or were obtained from or

belong to the defendant" upon request by the defendant. Rule 5(a)(1)(C), SCRCrP.

Compliance with Rule 5 is a fact-based inquiry. Under the present facts, the State not only disclosed the existence of the videotape, but also made the evidence available for inspection by defense counsel. The State even took the extra step of generating still photographs to assuage Petitioner's concerns about the contents of the videotape. Plea negotiations were ongoing until the day before jury selection, and there is no indication that the State would have withheld the videotape if a full trial on the merits followed. In fact, the identity of the informant had been disclosed to the defense by the time Petitioner pleaded guilty, removing any remaining impediment to Petitioner's access to the videotape in time for his trial. We note that, in cases involving a confidential informant, a criminal defendant's interest in access to certain evidence must be weighed against the State's interest in protecting the identity and safety of the informant. *See State v. Humphries*, 354 S.C. 87, 90, 579 S.E.2d 613, 614-15 (2003) ("Although the State is generally privileged from revealing the name of a confidential informant, disclosure may be required when the informant's identity is relevant and helpful to the defense or is essential for a fair determination of the State's case against the accused. For instance, if the informant is an active participant in the criminal transaction and/or a material witness on the issue of guilt or innocence, disclosure of his identity may be required depending upon the facts and circumstances." (internal citations omitted)). Here, the State struck the appropriate balance by allowing defense counsel to view the videotape and providing Petitioner with stills during negotiations. Therefore, under these circumstances, the manner and extent of disclosure to defense counsel was satisfactory under Rule 5 of the South Carolina Rules of Criminal Procedure.

Accordingly, it cannot be said that defense counsel acted
unreasonably in failing to seek to compel disclosure of
the videotape to defendant personally under the facts of
this case.

*Hyman*, 397 S.C. at 47-48, 723 S.E.2d at 381 (alterations by court).

The State argues the PCR court correctly denied Petitioner's claim that the State
committed prosecutorial misconduct by making his plea contingent on Petitioner
not viewing the video of the drug buy in order to protect the confidential informant
because the State properly provided still photographs from the video to Petitioner
and after Petitioner's counsel signed a protection order, allowed counsel to view the
video and relay a summary of the video to Petitioner during plea negotiations.[3]

We affirm the PCR court's denial of relief on Petitioner's claim of prosecutorial
misconduct because Petitioner failed to show the State violated *Brady* by

---

[3] Petitioner references a 2004 Memorandum from the then Chief Justice of the
South Carolina Supreme Court, Jean Hoefer Toal, to support his argument that the
State's practice here violated the Rules of Professional Conduct  Rule 3.4, RPC,
Rule 407, SCACR.  *See* Rule 3.4, RPC, Rule 407, SCACR ("A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter,
destroy or conceal a document or other material having potential evidentiary
value.").  However, this memorandum was not included in the Appendix.
Petitioner additionally cites a Utah criminal procedure rule.  *See* Utah R. Crim. P.
16(b) ("The prosecutor shall make all disclosures as soon as practicable following
the filing of charges and before the defendant is required to plead. The prosecutor
has a continuing duty to make disclosure."); *see also* Utah R. Crim. P. 16(a)
("Except as otherwise provided, the prosecutor shall disclose to the defense upon
request the following material or information of which the prosecutor has
knowledge: . . . (4) evidence known to the prosecutor that tends to negate the guilt
of the accused, mitigate the guilt of the defendant, or mitigate the degree of the
offense for reduced punishment; and (5) any other item of evidence which the
court determines on good cause shown should be made available to the defendant
in order for the defendant to adequately prepare a defense.").  In Petitioner's reply
brief, he asserts he did not cite *Brady* in his Petitioner's brief because no attorney
for Petitioner knows if a *Brady* violation has occurred due to the fact that no
attorney for Petitioner has seen the complete video and Petitioner's argument here
is that the State failed to comply with Rule 5, SCRCP.

prohibiting him from viewing the video.  First, no evidence here supports an argument that the video was in any way exculpatory.  *See Gibson*, 334 S.C. at 524, 514 S.E.2d at 324 (providing "the evidence [must be] favorable to the accused" for its nondisclosure to constitute a *Brady* violation).  Wellborn testified the video depicted an individual entering Petitioner's home, followed by the audio of a discussion between an individual and Petitioner that a jury would likely believe "was related to drugs and transactions related to drugs."  He stated Petitioner could also be seen on the video "fiddling with a package."  Wellborn believed the informant would have testified at Petitioner's trial that Petitioner was "packaging up drugs" in the video.  Additionally, Petitioner admitted the video depicted him "doing something with a plastic bag," adding, "It looked like I probably was messing with drugs."   Accordingly, the video was not favorable to Petitioner and did not implicate *Brady*.  *See Hyman*, 397 S.C. at 47, 723 S.E.2d at 381 ("Petitioner has not proven that the videotape was favorable to him.  By all accounts, including defense counsel's testimony, the videotape depicted Petitioner engaged in a drug transaction with a confidential informant.  Because the evidence at issue is *inculpatory*, *Brady* is inapplicable.").

Moreover, the State allowed Wellborn to view the video.[4]  As a result, the State did not refuse to disclose the evidence, another necessary element of a *Brady* claim.  *See Gibson*, 334 S.C. at 524, 514 S.E.2d at 324 (providing evidence must be "suppressed by the prosecution" to support a *Brady* violation claim); *Hyman*, 397 S.C. at 46, 723 S.E.2d at 381 ("[I]t is undisputed that the solicitor disclosed the videotape to defense counsel.  Therefore, in order to find that this action amounts to impermissible suppression under *Brady*, we must first assume that the Constitution requires disclosure of *Brady* evidence to a criminal defendant

---

[4] Petitioner asserts Wellborn only saw the portion of the video the State deemed relevant.  He points to Wellborn's testimony at the PCR hearing that the State told him it would "prepare relevant portions of the video for [him] to watch."  The State contends Wellborn testified he viewed "the video."  The PCR court's order quoted the State's email that it would "prepare the relevant portions of the video" and found Wellborn "testified he viewed the video."  Petitioner did not argue to the PCR court that because Wellborn only saw a portion of the video, he could not know if the omitted portions of the video were exculpatory.  A point not raised in a PCR application or at the PCR hearing is not proper for review on appeal.  *Hyman v. State*, 278 S.C. 501, 502, 299 S.E.2d 330, 331 (1983).  "In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application."  *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008).  The video was not admitted into evidence at the PCR court or submitted to this court.

*personally*. We are unwilling to make that sweeping assumption, and find that disclosure to defense counsel was satisfactory under the present circumstances.") Accordingly, we affirm as to this issue.

## II. Waiver of Right to Counsel

Petitioner contends the PCR court erred in not finding the plea court failed to establish he was adequately informed of the dangers of self-representation and the advantages of having an attorney represent him at the time of the plea hearing when the record established such issues were only dealt with in a pro forma fashion. Petitioner argues he did not waive his right to counsel with a full understanding of his rights and the consequences of self-representation. He asserts the plea court did not inquire about the circumstances under which his counsel was relieved or adequately warn him of the dangers of self-representation. Petitioner also asserts the State coerced his waiver of counsel by declaring its intent to seek an LWOP sentence at trial and refusing to allow him to review all the evidence against him. As a result, Petitioner argues he did not knowingly and voluntarily waive his right to counsel. We disagree.

"A defendant in a criminal case 'has the right to the assistance of counsel.'" *Osbey v. State*, 425 S.C. 615, 618, 825 S.E.2d 48, 50 (2019) (quoting *State v. Justus*, 392 S.C. 416, 419, 709 S.E.2d 668, 670 (2011)). "In *Faretta*, the United States Supreme Court held that criminal defendants have a fundamental right to self-representation under the Sixth Amendment." *State v. Samuel*, 422 S.C. 596, 602, 813 S.E.2d 487, 491 (2018). "In order to effectively invoke this right of self-representation, the defendant must clearly and unequivocally assert his desire to proceed *pro se* and such request must be made knowingly, intelligently[,] and voluntarily." *Id.*

> Although a defendant need not himself have the skill and experience of a lawyer in order [to] competently and intelligently . . . choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). "In a PCR action, if the record fails to demonstrate the petitioner made an informed choice to proceed *pro se*, with 'eyes open,' then the petitioner

did not make a knowing and voluntary waiver of counsel, and the case should be remanded for a new trial." *Gardner v. State*, 351 S.C. 407, 412, 570 S.E.2d 184, 186 (2002).

In *Iowa v. Tovar*, the Supreme Court addressed "the extent to which a trial [court], before accepting a guilty plea from an uncounseled defendant, must elaborate on the right to representation." 541 U.S. 77, 81 (2004). The Court considered whether, as the Iowa supreme court found, a court must specifically (1) advise a defendant that waiving counsel risks overlooking potential defenses and (2) admonish the defendant that by waiving counsel he would lose an independent opinion about whether pleading guilty was wise. *Id.* It held the Sixth Amendment did not require either warning, reasoning "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Id.* at 81. The Court explained:

> We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

*Id.* at 88.

Under South Carolina case law,

> To establish a valid waiver of counsel, *Faretta* requires the accused be: (1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation. In the absence of a specific inquiry by the trial [court] addressing the disadvantages of a *pro se* defense as required by the second *Faretta* prong, this [c]ourt will look to the record to determine whether [the] petitioner had sufficient background or was apprised of his rights by some other source.

*Prince v. State*, 301 S.C. 422, 423-24, 392 S.E.2d 462, 463 (1990).

In *State v. Bryant*, the probation revocation court and Bryant had the following exchange regarding Bryant's right to counsel:

> Q: Do you understand that you have a right to have a
> lawyer represent you in connection with these
> proceedings?
>
> A: Yes, sir.
>
> Q: Do you wish for the court to inquire as to whether
> you would be entitled to a court appointed lawyer or
> do you wish to go forward today?
>
> A: I want to go forward.
>
> Q: Okay. Do you understand that an attorney may be
> of benefit to you, for example, there may be things I
> need to be told that you do not know to tell me, and
> that if you talk with a lawyer you and the lawyer
> would learn these things, do you understand that?
>
> A: Yes, sir.
>
> Q: Understanding that, do you still wish to waive your
> right to counsel and go forward?
>
> A: Yes, sir.
>
> Q: Alright. At any[ ]time before I make a
> determination in this matter, if you desire to talk to a
> lawyer all you have to do is tell me and I'll stand
> aside and give you a chance to talk to a lawyer, do
> you understand?
>
> A: Yes, sir.

383 S.C. 410, 416, 680 S.E.2d 11, 14 (Ct. App. 2009). This court found the above "colloquy adequately informed Bryant of her right to counsel and informed Bryant

of the benefits of retaining counsel.  Further, the probation court indicated Bryant could invoke her Sixth Amendment right at any point prior to a final ruling."  *Id.* This court noted "the probation court did not expressly address the dangers and disadvantages of appearing pro se as required by *Faretta*."  *Id.*  Ultimately, however, this court found Bryant validly waived her right to counsel because she "had both a sufficient background and was apprised of her rights by some other source."[5]  *Id.* at 417, 680 S.E.2d at 15.

"The extent of inquiries made by the trial [court] . . . is not conclusive."  *Wroten v. State*, 301 S.C. 293, 294, 391 S.E.2d 575, 576 (1990).  "While a specific inquiry by the trial [court] expressly addressing the disadvantages of a *pro se* defense is preferred, the ultimate test is not the trial [court]'s advice but rather the defendant's understanding."  *Id.*  "If the record demonstrates the defendant's decision to represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied."  *Id.*

> When determining if an accused has a sufficient background to understand the dangers of self-representation, the courts consider many factors including: (1) the accused's age, educational background, and physical and mental health; (2) whether the accused was previously involved in criminal trials; (3) whether the accused knew the nature of the charge(s) and of the possible penalties; (4) whether the accused was represented by counsel before trial and whether that attorney explained to him the dangers of self-representation; (5) whether the accused was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether the accused knew of legal challenges he could raise in defense to the charge(s) against him; (9) whether the exchange between the accused and the court consisted merely of *pro forma*

---

[5] The court based that finding on "Bryant's previous experience in the criminal justice system, her previous representation by counsel, [a] signed Probation Notice [informing her she could have an attorney represent her and that there are dangers and disadvantages to self-representation], and the probation court's colloquy with her."  *Bryant*, 383 S.C. at 417, 680 S.E.2d at 14-15.

answers to *pro forma* questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment.

*Gardner*, 351 S.C. at 412-13, 570 S.E.2d at 186-87.

In *Wroten*, the supreme court found "the [plea court] made no specific inquiry to determine whether [the] petitioner made his choice to proceed *pro se* 'with eyes open.'" 301 S.C. at 294, 391 S.E.2d at 576. The court noted the petitioner "was forty-five years old at the time of his plea and had a fifth-grade education." *Id.* at 295, 391 S.E.2d at 576. The petitioner contacted a public defender after his bond hearing but never heard back from the attorney, and on the day of his plea, "the attorney did not have time to speak with him." *Id.* at 295, 391 S.E.2d at 576-77. When asked whether he wanted an attorney, the petitioner replied that he did not know what to do, and his prior experience with the court consisted of one other guilty plea. *See id.* at 295, 391 S.E.2d at 577. The supreme court found "the record . . . d[id] not demonstrate [the] petitioner was sufficiently aware of the dangers of self-representation to make an informed decision to proceed without counsel." *Id.* It reversed the PCR court's denial of relief and remanded for a new trial. *Id.*

In *Prince*, the supreme court similarly reversed the PCR court's denial of relief, finding "the record d[id] not demonstrate petitioner was sufficiently aware of the dangers of self-representation to make an informed decision to proceed *pro se*." 301 S.C. at 424, 392 S.E.2d at 463. The court noted Prince "was twenty-two years old at the time of his plea," "was a high-school graduate [with] some college education," "had previously pleaded guilty to armed robbery," "was mentally disturbed at the time of his plea," and "exhibited little understanding of criminal proceedings" at his PCR hearing. *Id.*

In *Gardner*, the supreme court found "the plea [court] did not give [the p]etitioner any warning about the dangers of proceeding *pro se*. [It] did not inform him of the nature of the charges or of the possible penalties." 351 S.C. at 413, 570 S.E.2d at 187. The court noted the petitioner had "a [twelfth-]grade education, and he had been represented by counsel on a previous charge to which he pled guilty. He also had a private attorney when he was first charged. However, the record [gave] no indication this attorney explained to him the dangers of self-representation." *Id.* The court further observed the plea court "did not advise [the p]etitioner of the crucial elements of the charged offenses, or of the possible penalties if the recommended sentence was not accepted by the [court]. In addition, the [court]

did not ask questions to ensure [the p]etitioner's understanding of the consequences of his plea." *Id.* at 414, 570 S.E.2d at 187. The supreme court determined the petitioner did not knowingly and intelligently waive his right to counsel, and it reversed the denial of PCR and remanded for a new trial. *Id.* at 410, 413-14, 570 S.E.2d at 185, 187.

Here, Petitioner's waiver of counsel was voluntary and not coerced by the State, as Petitioner argues. *See Samuel*, 422 S.C. at 602, 813 S.E.2d at 491 ("In order to effectively invoke this right of self-representation, the defendant must clearly and unequivocally assert his desire to proceed *pro se* and such request must be made knowingly, intelligently[,] *and voluntarily*." (emphasis added)). Petitioner was represented at his first plea hearing, at which he informed the plea court he was dissatisfied with Wellborn. Several days later, Petitioner reappeared in court and although intending to hire another attorney, affirmed he was "prepared to go forward without a lawyer." Soon thereafter, Petitioner "g[a]ve up [his] right" to an attorney, pled guilty, and received a fourteen-year sentence. At his PCR hearing, Petitioner claimed he decided to plead guilty because his plea offer would soon expire and after being unable to hire another attorney, he could not prepare for trial himself. However, Petitioner voluntarily chose both to remove Wellborn as his counsel and to take advantage of the State's plea offer, which reduced his sentence exposure from LWOP to fourteen years' imprisonment. Consequently, the State's decision to seek an LWOP sentence at trial and its handling of Petitioner's discovery materials did not coerce him into waiving his right to counsel or pleading guilty.

Next, Petitioner's waiver of counsel was knowingly and intelligently made. *See Samuel*, 422 S.C. at 602, 813 S.E.2d at 491 (noting a defendant's request to proceed pro se must also be made knowingly and intelligently). In *Gardner*, a PCR action that followed a guilty plea, our supreme court stated, "According to the United States Supreme Court, in order to waive the right to counsel, the accused must be (1) advised of his right to counsel *and* (2) adequately warned of the dangers of self-representation." 351 S.C. at 411, 570 S.E.2d at 186. The supreme court recently reaffirmed this requirement in another PCR case following a guilty plea. *See Osbey*, 425 S.C. at 619, 825 S.E.2d at 50 ("For a knowing and intelligent waiver to occur, the defendant must be '(1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation.'" (quoting *Prince*, 301 S.C. at 423-24, 392 S.E.2d at 463)).

In *Tovar*, which followed a guilty plea and was decided in 2004—after *Gardner* but before *Osbey*—the Court held two specific warnings required by the Iowa

Supreme Court were not "mandated by the Sixth Amendment," adding that "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." 541 U.S. at 81. This information is more limited than *Faretta's* requirements of warning against proceeding pro se and that a defendant "be made aware of the dangers and disadvantages of self-representation." 422 U.S. at 835. However, the circumstances in this case demonstrate either standard was met.

Under *Tovar*, which limited the duty of a plea court when warning a defendant of the dangers of self-representation in a collateral attack of the guilty plea, Petitioner's waiver was valid. 541 U.S. at 81. Here, the plea court informed Petitioner of the charge against him, its potential sentence, and the consequences of the charge being classified as "serious." It also informed Petitioner he had the right "to have an attorney represent [him]." *See id.* ("The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea."). The plea court further warned Petitioner, "It[']s dangerous for you to proceed without an attorney since you're not one and there is a benefit in having an attorney represent you."[6] We find, under the circumstances of this case, the plea court's warning was sufficient to satisfy the Sixth Amendment, and Petitioner "made an informed choice to proceed *pro se* . . . with 'eyes open.'" *Gardner*, 351 S.C. at 412, 570 S.E.2d at 186.

Moreover, Petitioner's background also weighs in favor of his understanding the dangers of self-representation. *See Prince*, 301 S.C. at 424, 392 S.E.2d at 463 ("In the absence of [sufficient warnings of the dangers of self-representation] . . . , this [c]ourt will look to the record to determine whether [the] petitioner had sufficient background or was apprised of his rights by some other source."). Here, Petitioner was twenty-nine years old, in college, and nothing indicates he suffered from any physical or mental health issues. *See Gardner*, 351 S.C. at 412, 570 S.E.2d at 186 (providing that some of the factors courts consider are "the accused's age, educational background, and physical and mental health"). He was previously charged with murder and convicted of distribution of ecstasy within proximity of a school, distribution of cocaine within proximity of a park, and intimidating a

---

[6] Petitioner also signed a plea waiver form that warned, "I understand an attorney would be of benefit to me, and since I am not an attorney, there is a danger in my representing myself."

witness. *See id.* (stating courts also consider "whether the accused was previously involved in criminal trials"). Petitioner was aware of the nature of his charges and the possible penalty, and Wellborn represented him until two days prior to his guilty plea. *See id.* at 412-13, 570 S.E.2d at 186-87 (noting courts can look at "whether the accused knew the nature of the charge(s) and of the possible penalties" and "whether the accused was represented by counsel before trial"). Petitioner testified at his PCR hearing he decided to plead guilty before the State's plea offer expired; thus, he was not "attempting to delay or manipulate the proceedings." *Id.* at 413, 570 S.E.2d at 187. Wellborn also testified at the PCR hearing he told Petitioner if the State's video evidence did not depict a drug sale, it would be a potential defense. *See id.* (providing courts also examine "whether the accused knew of legal challenges he could raise in defense to the charge(s) against him").

Additionally, Petitioner's colloquy prior to his waiver of counsel did not entirely consist of *pro forma* questions; instead, the plea court inquired about Petitioner's age, education, and employment and explained "the State would be required to appoint an attorney to represent" him if he could not afford one. *See id.* (finding courts consider "whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions"); *State v. Cash*, 309 S.C. 40, 46, 419 S.E.2d 811, 814-15 (Ct. App. 1992) (stating "the exchange between the [court] and Cash did not consist merely of *pro forma* answers to *pro forma* questions" because the court "explained that a lawyer would be appointed for Cash if he could not afford one"; "inquired about Cash's age and educational background, about the teachers he had in prison, and about the amount of time he had spent in prison"; "stressed that Cash could be sentenced to thirty years" for the indicted offense; and asked Cash why he did not want an attorney to represent him).

Finally, as stated above, Petitioner's plea was not coerced. *See Cash*, 309 S.C. at 43, 419 S.E.2d at 813 (noting courts consider "whether the accused's waiver resulted from either coercion or mistreatment"). Although the appendix contains no evidence of a warning to Petitioner that "he would be required to comply with the rules of procedure at trial" or that Wellborn "explained to him the dangers of self-representation," and the plea court did not appoint stand-by counsel, the majority of the above factors weigh toward a finding that Petitioner's background was sufficient for him to be aware of the dangers of self-representation. *See Gardner*, 351 S.C. at 413, 570 S.E.2d at 187. *Compare Osbey*, 425 S.C. at 620-21, 825 S.E.2d at 51 (finding two prior convictions and prior violations of probation and parole were "an insufficient basis on which to find Osbey actually understood

the dangers of self-representation"), *with Bryant*, 383 S.C. at 417, 680 S.E.2d at 15 ("Based on Bryant's previous experience in the criminal justice system, her previous representation by counsel, the signed Probation Notice, and the probation court's colloquy with her, we believe Bryant had both a sufficient background and was apprised of her rights by some other source."), *and Cash*, 309 S.C. at 43-46, 419 S.E.2d at 813-15 (finding Cash's background was sufficient because he was forty-six years old; spent thirty-four years in prison; completed the equivalent of six years in college; was not mentally or physically impaired; had previous experience with criminal proceedings, including a prior pro se appearance at a *habeas corpus* hearing; understood the nature of the charge and the possible penalty; had not been previously represented by counsel in the case but appreciated the difficulty of his case; was not attempting to delay or manipulate the proceedings; had stand-by counsel; knew he had to comply with procedural rules; was aware of potential defenses; did not engage in a merely *pro forma* colloquy with the court; and did not waive counsel due to coercion or mistreatment), *and State v. McLauren*, 349 S.C. 488, 495-96, 563 S.E.2d 346, 349-50 (Ct. App. 2002) (finding McLauren's background was sufficient when he was a mature man with both formal and informal education; the record contained no evidence of any physical or mental impairment; he had participated in his own previous criminal proceedings and was involved in the criminal proceedings of other individuals at the correctional facility where he was held; he knew the nature of the charge he faced; although he was not represented by an attorney before trial and appeared pro se at his arraignment, the court assigned an attorney to assist him during the trial if he needed, who sat at the defense table with him; nothing indicated he was attempting to delay or manipulate the proceedings as he made a motion for a speedy trial and trial began a few months after his arraignment; he knew to comply with procedural rules and had at least some familiarity with the rules—he made motions, called several witnesses, and objected to questions; he knew of legal challenges he could raise in defense to the charges against him—he argued a novel theory of law; and no evidence indicated his waiver resulted from coercion or mistreatment—he expressly stated he wanted to represent himself and would waive his right to an attorney).

Based on the foregoing, we affirm as to this issue.

## CONCLUSION

The PCR court's denial of Petitioner's application for PCR is

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., concur.**